**Hugo W. SCHOELLKOPF, Jr. and Caroline H. Schoellkopf, Appellants,**

v.

**R.L. PLEDGER, Appellee.**

No. 05–86–00283–CV.

Court of Appeals of Texas, Dallas.

Oct. 12, 1987.

Appellee's Rehearing Denied Nov. 13, 1987.

Appellant's Rehearing Denied Nov. 16, 1987.

---

Ernest R. Higginbotham, P. Michael Jung, John M. McDowell, Dallas, for appellants.

Mark S. Werbner, Dallas, for appellee.

Before WHITHAM, HECHT and ROWE, JJ.

HECHT, Justice.

Hugo W. Schoellkopf, Jr., his wife, Caroline H. Schoellkopf, and R.L. Pledger were sued as co-guarantors of the debt of a bankrupt corporation in which Hugo Schoellkopf and Pledger were shareholders. The Schoellkopfs eventually paid the

entire debt and cross-claimed from Pledger contribution of his share. Pledger denied liability to the Schoellkopfs and in turn cross-claimed against them for actual and punitive damages he alleged were caused by their tortious conduct against the corporation. After a jury trial the district court rendered judgment awarding Pledger actual and exemplary damages and denying the Schoellkopfs' claim for contribution.

We hold that Pledger cannot recover damages for his own loss caused solely by wrongs done the corporation. We further hold that the Schoellkopfs have not waived error in the award of such damages by failing to file a verified denial of Pledger's right to recover in his individual capacity. We also hold that the Schoellkopfs are not entitled to contribution from Pledger based upon a guaranty which he was fraudulently induced to sign. Consequently, we reverse that portion of the judgment which awards damages to Pledger, render judgment that he take nothing against the Schoellkopfs, and affirm the remainder of the judgment.

I

R.L. Pledger and Conald Cox, long-time friends and businessmen engaged in different aspects of the aviation industry, persuaded Wayne Williams to join them in forming Midway Aircraft Sales, Inc. Each of the three owned one third of Midway's stock and all participated in its business, Williams acting as manager. The three purposed to operate Midway's aircraft sales business in conjunction with Pledger's avionics sales and service business, Flite Electronics, Inc., and Cox's aircraft maintenance business, C & C Aircraft Services, Inc. The three businesses, Midway, Flite and C & C, shared the same hangar, each under its own lease. Together, they performed profitably for several years.

Nearing retirement, Cox decided to sell his business, C & C, to the Schoellkopfs. Two days after the Schoellkopfs assumed control of C & C, it applied for a Cessna dealership, partly to gain Cessna's dealer discount on parts, but also to sell Cessna airplanes. Cessna ordinarily required dealers to sell planes only from the dealership location, which, for C & C, was the hangar it shared with Midway and Flite. Midway, however, had by the terms of its lease the exclusive right to sell airplanes in the hangar, which it refused to release. Thus, C & C could not sell Cessna aircraft from the hangar so long as Midway was doing business there.

Pledger alleges that as soon as the Schoellkopfs learned that Midway's exclusive right would prevent them from operating a Cessna dealership through their newly acquired C & C, they plotted a Trojan-horse conspiracy to remove this obstacle by destroying Midway. First, Pledger says, the Schoellkopfs invaded Midway. Several months after purchasing C & C from Cox, Hugo Schoellkopf also purchased Cox's one-third interest in Midway, telling Pledger and Williams that he was interested in Midway as a long-term investment. The Schoellkopfs also purchased the hangar, thus becoming Midway's landlord. Second, the Schoellkopfs won Pledger's and Williams' confidence. Hugo Schoellkopf urged Pledger and Williams to move Midway's loans from the several banks it had used in the past and consolidate them at the bank the Schoellkopfs had used for many years, Mercantile National Bank at Dallas, where he promised to help Midway obtain better lines of credit. Persuaded by the Schoellkopfs' perceived clout with Mercantile and their willingness to personally guarantee Midway's debts there, as well as by Hugo Schoellkopf's expressed commitment to Midway's business, Pledger and Williams agreed to the move and also personally guaranteed Midway's obligations to Mercantile. Shortly thereafter, according to Pledger, the Schoellkopfs unmasked their true intentions. Less than 90 days after the move to Mercantile, just before Midway's first interest payment was due, and a few days after C & C became a Cessna dealer, the Schoellkopfs suddenly and without warning to Pledger or Williams withdrew their continuing guaranty of Midway's obligations. Without the

Schoellkopfs' guaranties Mercantile would not extend Midway credit, and without credit Midway could not survive. Within months Midway fell, bankrupt.

Mercantile initiated the present litigation, suing Pledger, Williams and the Schoellkopfs on their personal guaranties for Midway's unpaid debt. The Schoellkopfs paid Mercantile a total of $675,690.47, obtained a dismissal of Mercantile's action, and took an agreed judgment against Williams for $193,643.20,[1] leaving only the cross-claims between Pledger and the Schoellkopfs remaining. The Schoellkopfs sued Pledger for contribution of half what they paid Mercantile.[2] Pledger denied any liability to the Schoellkopfs, claiming that they had fraudulently induced him into personally guaranteeing Midway's obligations to Mercantile. Pledger further alleged that the Schoellkopfs were liable to him for the loss of value of his Midway stock and exemplary damages because they had unfairly competed and conspired against Midway. Pledger contended that the Schoellkopfs' motive in destroying Midway was to protect their substantial investments in C & C, the hangar, and related businesses, even though Midway's insolvency would cast upon them liability for part of Midway's debts. The Schoellkopfs denied Pledger's charges, contending that Midway's demise resulted, not from any conspiracy, but from poor management, high interest rates, and a downturn in economic conditions throughout the aviation industry.

The jury apparently believed Pledger, finding that:

—Hugo and Caroline Schoellkopf conspired to eliminate Midway from their hangar, tortiously interfered with Midway's contractual rights, and engaged in unfair competition against Midway;

—the Schoellkopfs' actions proximately caused damage to Pledger;

—$296,250 would fairly compensate Pledger for his damages caused by Hugo Schoellkopf, and a like sum for his damages caused by Caroline Schoellkopf;

—$1,000,000 exemplary damages should be awarded Pledger against Hugo Schoellkopf, and $200,000 against Caroline Schoellkopf;

—Hugo Schoellkopf fraudulently induced Pledger to execute a personal guaranty to Mercantile; and

—Williams was insolvent.

The district court rendered judgment awarding Pledger actual damages of $127,227.39,[3] and exemplary damages against Hugo Schoellkopf of $500,000.00.[4] The judgment ordered that the Schoellkopfs recover nothing from Pledger on their claim for contribution.

---

1. The Schoellkopfs took this judgment as part of a settlement with Williams and agreed not to execute on it if Williams would pay them $1,000 per month for 25 months.

2. The Schoellkopfs take the position that because Mercantile had three separate guaranty agreements, one signed by both the Schoellkopfs and one each by Pledger and Williams, and because Williams was insolvent, there are essentially two guaranty obligations. Thus, they argue that they are liable for half Midway's debt and Pledger is liable for the other half.

3. As noted, the jury found that the Schoellkopfs each caused Pledger $296,250 actual damages. Apparently, Pledger persuaded the trial court to interpret the verdict to find that the Schoellkopfs together caused Pledger a total of $296,250 actual damages. Pledger further argued to the trial court that because this sum was so much greater than the evidence as to the loss of value of Pledger's Midway stock, it must include the portion of Midway's debt Pledger guaranteed to Mercantile, which Pledger argued was one fourth. Pledger thus calculated the judgment award of actual damages as follows:

| | |
|---|---|
| Jury finding | $296,250.00 |
| Less: Pledger's 1/4 share of Midway's unpaid debt to Mercantile of $675,690.47 | −168,922.61 |
| Judgment award of actual damages | $127,327.39 |

No explanation is offered for the $100 difference between this figure and the $127,227.39 actually awarded.

4. Apparently on its own motion, the district court reduced the jury awards of exemplary damages from $1,000,000 to $500,000 against Hugh Schoellkopf and from $200,000 to zero against Caroline Schoellkopf.

## II

Pledger does not allege that the Schoellkopfs wronged *him*, nor does he claim damages on behalf of Midway. Rather, Pledger claims that the Schoellkopfs wronged Midway, and that he is entitled to recover damages for his own loss caused by their actions. The Schoellkopfs argue that Pledger cannot recover damages for personal loss resulting from wrongs done the corporation, and that the cause of action for such wrongs is solely the corporation's. Pledger replies that the Schoellkopfs have waived their contention by failing to file a verified denial of Pledger's right to recover in the capacity in which he sues. The Schoellkopfs respond that the issue is not capacity but right to sue, verified denial of which is not required. We agree with the Schoellkopfs on both issues.

### A

■ A corporate stockholder has no individual cause of action for personal damages caused solely by wrong done the corporation, even though he may be injured by that wrong.

Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers

relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distribution to the stockholders as dividends, or for such other purposes as the directors may lawfully determine.[5]

A corporate stockholder may, however, have an action for personal damages for wrongs done to him as an individual stockholder "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." [6] This principle, often mischaracterized an exception to the general rule that stockholders may not sue for personal injury resulting from a violation of the corporation's rights, simply recognizes that a stockholder may sue for violation of his own individual rights regardless of whether the corporation also has a cause of action. It is not personal injury which gives rise to a personal cause of action by the stockholder, for an injurious wrong to the corporation perforce injures its stockholders. Rather, it is the nature of the wrong, whether directed against the corporation only or against the stockholder personally, which determines who may sue.

■ Thus, a stockholder has an individual cause of action for breach of an agreement involving and even benefiting the corporation to which the stockholder is himself

**5.** *Massachusetts v. Davis,* 168 S.W.2d 216, 221 (Tex.1942), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).

**6.** *Davis,* 168 S.W.2d at 222; *accord, Stinnett v. Paramount–Famous Lasky Corp.,* 37 S.W.2d 145, 149–151 (Tex.Comm'n App.1931, holding approved); *Morrison v. St. Anthony Hotel,* 295 S.W.2d 246, 250 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.); *Cullum v. General Motors Acceptance Corp.,* 115 S.W.2d 1196, 1200–

1202 (Tex.Civ.App.—Amarillo 1938, no writ); *Empire Life Ins. Co. of America v. Valdak Corp.,* 468 F.2d 330, 335 (5th Cir.1972); *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir.1968); *see, United States v. Palmer,* 578 F.2d 144, 146 (5th Cir.1978); 12B Fletcher, Encyclopedia of the Law of Private Corporations § 5921 (1984).

a party,[7] but not for breach of a contract to which the corporation alone is a party.[8] Ordinarily, a corporation alone may sue for mismanagement of its own affairs; but if the manager's misconduct violates some duty owed the stockholder independently, the stockholder may sue.[9] A stockholder has no right to sue for wrongful garnishment directed to the corporation,[10] or for wrongful foreclosure of its assets,[11] or for destruction of its business,[12] even if motivated by malice toward the stockholder individually.[13]

■ The Schoellkopfs contend that any wrongdoing on their part for which Pledger has been awarded damages was directed, not at Pledger, but solely at Midway. The Schoellkopfs point to the fact that all but one of the jury's findings of misconduct on their part were of actions directed against Midway, and the one exception was not a basis for Pledger's damage claim but for defense of the Schoellkopfs' contribution claim. Pledger defends his recovery on his individual cause of action as being properly founded upon the Schoellkopfs' breach of promises made to Pledger personally, fraud, breach of a duty of a landlord to his tenant, breach of a duty of co-guarantors to one another, and breach of a duty owed by one stockholder to another. Pledger argues that the jury's finding of fraud supports an award of damages, and that all other such wrongdoing was established as a matter of law and no jury findings were required.

*Breach of promises.* There is evidence that Hugo Schoellkopf promised Pledger that "he was buying into Midway for the long term and would help Midway." The evidence is not conclusive, however, either that Hugo Schoellkopf made those promises, or that he failed to keep them, and Pledger did not request a jury finding on either issue. Pledger has therefore waived this ground of recovery. Tex.R.Civ.P. 279.

*Fraud.* The jury found that Hugo Schoellkopf fraudulently induced Pledger to guarantee Midway's obligations to Mercantile. The Schoellkopfs argue that the issue of fraud was submitted to the jury only as a defense to their claim of contribu-

7. *Buschmann v. Professional Men's Ass'n,* 405 F.2d 659 (7th Cir.1969) (alleged breach of implied promise not to mismanage corporation in agreement to form, finance and operate the corporation); *Eden v. Miller,* 37 F.2d 8 (2d Cir. 1930) (alleged violation of oral agreement to form, fund, operate and acquire business for new corporation); *Vickers v. First Mississippi Nat'l Bank,* 458 So.2d 1055 (Miss.1984) (alleged breach of agreement between stockholder and bank to finance corporation).

8. *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893 (5th Cir.1968).

9. *Empire Life Ins. Co. of America v. Valdak Corp.,* 468 F.2d 330 (5th Cir.1972) (stockholder who pledged stock to defendant who later gained control of corporation can sue defendant for mismanagement of the corporation and consequent impairment of the value of the collateral stock as breach of duty of pledgee of collateral to pledgor); *Morrison v. St. Anthony Hotel,* 295 S.W.2d 246 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.) (minority stockholder may sue majority stockholder for malicious suppression of dividends and mismanagement to suppress the value of the stock, as breach of duty of trust between majority and minority stockholders); *Moroney v. Moroney,* 286 S.W. 167, 170 (Tex.Comm'n App.1926, judgmt adopted) (guardian who manages a corporation in which his ward's estate is the principal shareholder may be directly liable to the ward for mismanagement resulting in depreciation in the value of the estate's shares, as breach of the duty of a guardian to his ward).

10. *Massachusetts v. Davis,* 168 S.W.2d 216 (Tex. 1942), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).

11. *United States v. Palmer,* 578 F.2d 144 (5th Cir.1978).

12. *Cullum v. General Motors Acceptance Corp.,* 115 S.W.2d 1196 (Tex.Civ.App.—Amarillo 1938, no writ) (stockholder may not sue for destruction of corporation's car sales business); *Stinnett v. Paramount–Famous Lasky Corp.,* 37 S.W. 2d 145 (Tex.Comm'n App.1931, holding approved) (dicta: stockholders may not sue for destruction of corporation's movie theater business).

13. *Green v. Victor Talking Mach. Co.,* 24 F.2d 378 (2d Cir.1928) (stockholder could not sue for destruction of corporation's resale business, even if defendant acted out of malice toward stockholder personally).

tion and cannot now serve as an independent ground of recovery by Pledger. We do not agree that the effect of jury issues is limited by the motive for submitting them. However, the only injury that fraud could have caused Pledger would have been liability on the guaranty, the specter of which has vanished with the Schoellkopfs' payment of Midway's debts in full and our holding that they are not entitled to contribution from Pledger. Pledger could not have incurred any other loss from such fraud for which he could be awarded damages.

*Breach of landlord's duty to tenant.* When they bought the hangar, the Schoellkopfs became Midway's landlord, but they were never Pledger's landlord. Assuming the Schoellkopfs breached some duty that landlords owe tenants, Midway was the victim, not Pledger.

*Breach of duty to co-guarantor.* Pledger argues that "[a] guarantor owes a duty to his fellow co-guarantors not to wrongfully, maliciously and intentionally create liability for [them]." Assuming such a duty exists, there is neither a jury finding nor conclusive evidence that the Schoellkopfs breached it. Pledger has therefore waived this ground of recovery. Tex.R. Civ.P. 279.

*Breach of duty to co-stockholder.* Pledger argues that "a co-shareholder in a closely held corporation should owe an implied duty of good faith and fair dealing to his co-shareholders." Although such a fiduciary duty may exist in some instances, we are unwilling to apply it as a matter of law to all shareholders of closely held corporations.[14] Whether a fiduciary relation-ship exists in any particular situation is usually a question for the factfinder,[15] except in a few relationships of special trust which are fiduciary by their very nature.[16] The relationship between stockholders of a corporation is not always a fiduciary one.[17] The evidence in this record falls far short of establishing conclusively the existence of a fiduciary relationship between Pledger and the Schoellkopfs, or the latter's breach of it. Not having requested a jury finding on these issues, Pledger has waived them as a ground of recovery. Tex.R.Civ.P. 279.

Pledger argues that this is precisely the sort of case in which a stockholder ought to be allowed to recover damages individually for his co-stockholder's wrongdoing, for any damages the corporation recovered would benefit the wrongdoer as a stockholder. The issue, however, is not whether such recovery is ever available in these circumstances, but whether Pledger is entitled to it on this record. We hold that the jury verdict does not support an award of damages to Pledger.

**B**

The contention that a plaintiff is not entitled to recover in the capacity in which he sues must be pled specifically and under oath. Tex.R.Civ.P. 93(2). The Schoellkopfs filed no such plea. Pledger therefore argues that they cannot now complain that he is not entitled to recover damages as a stockholder of Midway.

It is something of an understatement to say that the cases have not been entirely consistent in determining whether a defendant must have filed a verified denial of the plaintiff's right to recover in the capaci-

---

14. *See Baylor v. Jordan,* 445 So.2d 254, 256 (Ala.1984); *Johns v. Caldwell,* 601 S.W.2d 37, 41–42 (Tenn.App.1980); *see also Duncan v. Lichtenberger,* 671 S.W.2d 948, 953 (Tex.App.— Fort Worth 1984, writ ref'd n.r.e.) (jury found majority stockholder breached fiduciary duty to minority stockholders); *see generally* 12B Fletcher, Cyclopedia of the Law of Private Corporations § 5811 (1984); *but see Donahue v. Rodd Electrolyte Co.,* 328 N.E.2d 505, 515 (Mass. 1975); *Helms v. Duckworth,* 249 F.2d 482, 486– 487 (D.C.Cir.1957).

15. *Fuqua v. Taylor,* 683 S.W.2d 735, 737–738 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

16. *E.g. Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502 (Tex.1980).

17. See note 14 *supra.*

ty in which he sues in order to complain on appeal that the plaintiff failed to prove ownership of the cause of action asserted. Some courts have held that a verified denial is necessary,[18] some have held it is not,[19] and some have held both.[20] We agree with *Brans v. Office Building Managers, Inc.,* 593 S.W.2d 414, 415 (Tex.Civ.App.—Dallas 1980, no writ), and similarly reasoned cases:

> Only if plaintiff were seeking recovery in a representative capacity would it become necessary for defendant to deny its capacity under rule 93[c].

Tex.R.Civ.P. 93(c).

In the cases which hold that a verified denial of capacity is required to complain that plaintiff does not own the cause of action sued upon, we find no explanation of how a defendant can be expected to be able to swear under oath what his opponent does or does not own. The burden is on the plaintiff to prove the elements of his claim, including his ownership of it. The defendant is not burdened with disproving that element of the plaintiff's claim.

The purpose of requiring that certain matters be denied by verified pleadings or waived is to eliminate from trial issues not seriously contested. If a general denial put all such matters in issue, trial would be heavily burdened with proof of matters not seriously disputed or disputable. A defendant who wishes to try whether a plaintiff suing in some representative capacity is entitled to recover in that capacity can raise the issue only by denying plaintiff's capacity under oath. Otherwise, the plaintiff's right to recover is in effect presumed without proof.

■ Pledger is not suing in any capacity other than his own. To require the Schoellkopfs to file a verified denial in this case would be to require them to deny under oath that Pledger has a cause of action. Rule 93 does not impose such a requirement.

Furthermore, even if the Schoellkopfs were required to file a verified denial of Pledger's right to recover in the capacity in which he sues, their failure to do so would not preclude their complaint here. The issue for us is not whether Pledger is entitled to recover from the Schoellkopfs in his individual capacity, but whether the record and verdict support the judgment. The verdict establishes half of each of two causes of action: wrong to Midway (for which Pledger does not seek to recover damages derivatively), and damages caused to Pledger (without a finding or conclusive showing of wrong to Pledger). This defect is not one of capacity.

---

18. *E.g., Van Voorhies v. Hudson,* 683 S.W.2d 809, 810–811 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (failure to file verified denial of capacity waived complaint on appeal that defendant dealt with plaintiff's corporation, not plaintiff individually); *Biggs v. Garrett,* 651 S.W.2d 342, 343 (Tex.App.—El Paso 1983, no writ) (same holding as *Van Voorhies*); *Sam Kane Beef Processors, Inc. v. Manning,* 601 S.W.2d 93, 94–95 (Tex.Civ.App.—Corpus Christi 1980, no writ) (failure to file verified denial of capacity waived complaint on appeal that owner of cause of action was a corporation and not individual plaintiff).

19. *E.g., Melvin Williams Constr., Inc. v. Salter,* 703 S.W.2d 393, 396 (Tex.App.—Beaumont), *rev'd per settlement agreement of parties,* 713 S.W.2d 96 (Tex.1986) (complaint that plaintiff not entitled to recover for damage to vehicle owned by his father not waived by failure to file verified denial of capacity); *Carr v. Galvan,* 650 S.W.2d 864, 869–870 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (complaint that plaintiff

not entitled to recover for damage to his wife's car, her separate property, not waived by failure to file verified denial of capacity, because plaintiff not suing in any representative capacity); *Hamilton v. James A. Cushman Mfg. Co.,* 15 Tex.Civ.App. 338, 39 S.W. 641, 642 (1897, no writ) (complaint that account owed to corporation and not partnership not waived by failure to file verified denial of capacity).

20. *Compare Southwest Indus. Inv. Co. v. Berkeley House Investors,* 695 S.W.2d 615, 617 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (complaint that defendant did not contract with partnership but with individuals who later formed partnership was waived for failure to file verified denial of capacity) *with Brans v. Office Bldg. Managers, Inc.,* 593 S.W.2d 414, 415 (Tex.Civ.App.—Dallas 1980, no writ) (complaint that plaintiff did not own premises and was not defendant's landlord not waived by failure to file verified denial of capacity).

Accordingly, we conclude that the Schoellkopfs have not waived their right to complain that Pledger is not entitled to recover damages against them for wrong done Midway. Having concluded that the verdict and record do not support an award of actual or exemplary damages to Pledger, we reverse and render judgment that Pledger take nothing against the Schoellkopfs.[21]

### III

The Schoellkopfs each paid half of Midway's $675,690.47 debt to Mercantile and each claim a right of contribution from Pledger for half what they paid. They argue that the evidence is factually and legally insufficient to support Pledger's fraud defense to Hugo Schoellkopf's claim for contribution, and that Pledger has failed to establish any defense at all to Caroline Schoellkopf's separate contribution claim. Pledger answers that the evidence is sufficient to support the jury finding that Hugo Schoellkopf fraudulently induced him to execute the guaranty to Mercantile, thereby barring his contribution claim, and that Caroline Schoellkopf's inequitable conduct precludes her from recovering on her contribution claim. We agree with Pledger on both issues.

### A

■ The jury found that Hugo Schoellkopf fraudulently induced Pledger to guarantee payment of Midway's indebtedness to Mercantile. Considering only the evidence and inferences favorable to the verdict,[22] the evidence we have summarized above is some evidence that Hugo Schoellkopf made a material misrepresentation of fact which induced Pledger to sign the guaranty (i.e., that he was interested in Midway as a long-term investment), that he knew the misrepresentation was false when made (because he had already caused C & C to apply for a Cessna dealership that would directly compete with Midway), that Pledger did not know the misrepresentation was false when made (indeed, he hoped it was true), that Hugo Schoellkopf intended that Pledger act upon the misrepresentation (by signing the guaranty to Mercantile), and that Pledger did so. Considering all the evidence,[23] it is sufficient to support the jury's verdict.

Because Hugo Schoellkopf fraudulently induced Pledger to sign the guaranty, he is barred from seeking contribution based upon Pledger's obligations under it.[24]

### B

■ There is evidence that Caroline Schoellkopf actively participated in her husband's conduct. She owned 51% of C & C, she helped acquire the Cessna dealership, and her very substantial financial resources supported their ventures. Mercantile would not extend Midway credit without her personal guaranty. This and the other evidence we have summarized above is some evidence to support the jury's findings that Caroline Schoellkopf conspired to eliminate Midway from the hangar, tortiously interfered with its contractual rights (i.e., the hangar lease), and unfairly competed with it. The evidence, considered as a whole, is sufficient to support the jury's verdict.

"The right of contribution is of equitable origin and is governed by equitable considerations.... It will not be awarded unless

21. We sustain the Schoellkopfs' point of error 17. Because of our holding, we do not address the Schoellkopfs' points of error 1–16 and 24–40, and supplemental points of error 39A and 40A, or Pledger's cross-points of error 1 and 2.

22. This, of course, is the standard for determining whether there is no evidence to support the judgment. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

23. This, of course, is the standard for reviewing sufficiency of the evidence. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 594 (Tex.1986).

24. We overrule the Schoellkopfs' points of error 42–51.

the party seeking such relief is equitably entitled thereto...." [25] On this record, the district court could well conclude that Caroline Schoellkopf was not equitably entitled to contribution. We will not disturb the court's judgment.[26]

## IV

The award of damages to Pledger against the Schoellkopfs is reversed and judgment is rendered that Pledger take nothing from the Schoellkopfs. In all other respects the judgment is affirmed.

**25.** *United States Fidelity & Guar. Co. v. Century Indem. Co.,* 78 S.W.2d 737, 738 (Tex.Civ.App.— El Paso 1935, writ dism'd w.o.j.) (citations omitted).

**26.** We overrule the Schoellkopfs' points of error 18–23 and 41.