



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SUNTECH PROCESSING SYSTEMS, L.L.C., CASH DELIVERY SYSTEMS, L.L.C., UICI, INC., f/k/a UNITED INSURANCE COMPANIES, INC., and RONALD L. JENSEN, Appellants

No. 05-99-00213-CV     V.

SUN COMMUNICATIONS, INC. and RICHARD SCHAPPEL, Appellees

Appeal from the 14th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 98-01051-A).
Opinion delivered by Justice Wright, Justices Whittington and Roach, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court in **AFFIRMED** in part and **REVERSED** in part. The judgment of the trial court granting judgment that Suntech Processing Systems, L.L.C. take nothing on its claims for conversion/misappropriation against Richard Schappel is **AFFIRMED**.

The remainder of the trial court's judgment is **REVERSED** and this cause is **REMANDED** to the trial court for new trial. It is **ORDERED** that appellants Suntech Processing Systems, L.L.C., Cash Delivery Systems, L.L.C., UICI, INC., f/k/a United Insurance Companies, Inc., and Ronald L. Jensen recover their costs of this appeal from appellees Sun Communications, Inc. and Richard Schappel.

The obligations of United States Fire Insurance Company as surety on appellants' supersedeas bond are **DISCHARGED**.

Judgment entered August 1, 2000.

CAROLYN WRIGHT
JUSTICE

AFFIRM in part, REVERSE and REMAND in part and Opinion
Filed August 1, 2000



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-99-00213-CV

## SUNTECH PROCESSING SYSTEMS, L.L.C., CASH DELIVERY SYSTEMS, L.L.C., UICI, INC., f/k/a UNITED INSURANCE COMPANIES, INC. and RONALD L. JENSEN, Appellants

### V.

## SUN COMMUNICATIONS, INC. and RICHARD SCHAPPEL, Appellees

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 98-01051-A

## OPINION

Before Justices Whittington, Wright, and Roach
Opinion By Justice Wright

SunTech Processing Systems, L.L.C. (STP), Cash Delivery Systems, L.L.C. (CDS), UICI, Inc., f/k/a United Insurance Companies, Inc., and Ronald Jensen appeal a summary judgment rendered in favor of Sun Communications, Inc. (Sun) and Richard Schappel.[1] In seventeen issues, Jensen contends generally the trial court erred by: (1) declaring the parties' rights in accordance with

---

[1]STP and CDS filed a joint brief. UICI and Jensen each filed a separate brief. Many of the issues are overlapping.

Sun's interpretation of the second memorandum agreement; (2) granting summary judgment on Sun's securities law claims; and (3) denying his counterclaims. In fifteen issues, UICI contends generally the trial court erred by (1) granting summary judgment on Sun's securities law claim; and (2) concluding that it owed a fiduciary duty to Sun. In four issues, STP and CDS contend generally the trial court erred by (1) denying their motion to disqualify one of Sun's attorneys; and (2) granting summary judgment in favor of Sun on STP's claims for conversion and misappropriation against Sun's president. We affirm in part and reverse in part. We overrule STP's fourth issue and affirm the trial court's summary judgment that STP take nothing on its claims for conversion and misappropriation against Schappel. Because we sustain Jensen's first, fourth, seventh, and eighth issues, UICI's first, second, third, fourth, and tenth issues, and STP and CDS's second issue, we reverse the trial court's final judgment and remand this case for a new trial.

## Background

Sun was created in 1991. It was involved in the automatic teller machine (ATM) business. Jensen, president of UICI, was interested in investing in the ATM business. Jensen, UICI, and Sun agreed to form Sun Network Technologies, L.L.C. (SNT) and Sun Network Acquisitions, L.L.C. (SNA) for the purpose of carrying out that business. UICI invested $4 million and Jensen agreed to fund a $6 million line of credit.

In 1996, SNT was experiencing financial problems. Jensen agreed to invest funds in SNT on the condition that SNT be restructured and divided into two companies. The parties agreed and entered into the Second Memorandum Agreement (Agreement) in March 1997. Under the terms of the Agreement, the struggling ATM business remained in SNT and was renamed CDS. The profitable transaction processing services business was transferred to the new company, STP.

–2–

As a result of the restructuring, Jensen owned one-hundred percent of the Class A membership interest and eighty percent of the Class B membership interest of the ATM business, CDS. Sun owned the remaining twenty percent of the Class B membership interest of CDS. UICI owned one-hundred percent of STP's Class A membership interest and eighty percent of STP's Class B membership interest in the transaction processing services business. Sun owned the remaining twenty percent of STP's Class B membership interest. In sum, Jensen owned a controlling interest in CDS and Jensen's company, UICI, owned a controlling interest in STP.

In February 1998, UICI, as controlling member of STP, voted to sell STP's assets in the transaction processing services business to Transaction Network Services, Inc. After STP sold substantially all of its assets, it had approximately $17,847,000 in cash remaining. Thereafter, over Sun's objection, UICI voted to dissolve STP and wind up its operations. STP sought to transfer $9,638,357 of the proceeds from the sale of STP to CDS to enable CDS to pay off its loan to Jensen.

Seeking to prevent this transfer of funds to CDS, Sun filed a lawsuit asking the trial court to interpret the Agreement and, based on that interpretation, to award an appropriate distribution of funds from the sale of assets of STP. The trial court entered a temporary injunction preventing the transfer to CDS. The trial court also ordered that CDS and STP be judicially dissolved. On interlocutory appeal, this Court affirmed the temporary injunction but reversed the order of judicial dissolution.

In the trial court, Sun raised the following causes of action: (1) breach of contract; (2) violation of the Texas Limited Liability Company Act; (3) fraudulent conveyance; (4) self-dealing, breach of fiduciary duty, constructive fraud, and constructive trust; (5) anticipatory breach; (6) violation of both state and federal securities laws; (7) judicial dissolution; and (8) attorney's fees.

Jensen counterclaimed alleging causes of action for (1) declaratory judgment; (2) reformation; (3) fraud; (4) negligent misrepresentation; (5) promissory estoppel; and (6) unjust enrichment. UICI asserted the following counterclaims: (1) declaratory judgment; (2) reformation; and (3) wrongful injunction.

STP and CDS alleged counterclaims against Sun for (1) reformation; (2) recission; (3) declaratory judgment; and (4) conversion. In the alternative, STP and CDS alleged counterclaims for mutual mistake and misappropriation of company funds.

Sun filed an amended motion for summary judgment and appellants filed cross-motions for summary judgment. The trial court granted Sun's second amended motion for summary judgment and ordered judicial dissolution of STP and CDS and the appointment of a liquidator. The trial court also ordered that STP's assets of approximately $19.1 million be deposited in the court's registry.

The case went to trial solely on the issue of Sun's attorney's fees. On January 5, 1999, the jury awarded Sun $1,721,240 in attorney's fees through trial and an additional $406,000 on appeal. On May 4, 1999, the trial court signed the Modified Judgment and Order of Dissolution. STP, CDS, UICI, and Jensen filed this timely appeal.

### Standard of Review

We review summary judgment using the following well-known standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

–4–

*Nixon v. Mr. Property Mgmt Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999). When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *See Pierce v. Sheldon Petroleum Co.*, 589 S.W.2d 849, 852 (Tex. Civ. App.–Amarillo 1979, no writ). Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). When a summary judgment order does not specify the ground upon which the ruling was granted, we will affirm the judgment if any one of the grounds advanced in the motion are meritorious. *See State Farm & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

### The Second Memorandum Agreement

In issues one through three, Jensen contends the trial court erred by granting Sun's motion for summary judgment on the Agreement. STP and CDS raise this same point in their second issue. The focus of the parties' controversy is the following provision of the Agreement:

> All parties agree that there will be no distributions to Class B members until all Class A preferred interests in both [STP] and [CDS] have been paid or redeemed in full. Should funds be available to any parties from either [CDS] or [STP] such funds will be loaned to the other company until the preferred interests are retired. The interest rate and terms should be the same as the $2,000,000 unsecured loan of [Jensen] to [CDS].

The proper distribution of the proceeds from the sale of STP is widely disputed. On the one hand, Jensen contends that his interest must be paid prior to the interests of the Class A and Class B members. On the other hand, Sun contends that the above provision provides for a loan to pay the preferred interest. Sun contends that Jensen's interest cannot be retired by way of a loan because

there is no possibility that the loan will be repaid.

STP, CDS, UICI, and Jensen filed a joint response to Sun's amended motion for partial summary judgment. Attached to the joint response was the affidavit of Vernon R. Woelke. Woelke is the vice-president and treasurer of UICI. Woelke states in his affidavit that the minutes of the February 25, 1998 meeting reveal that Schappel agreed to the disposition as proposed by Jensen. The minutes state:

> Mr. Kittleson indicated that he needed to know how the proceeds would be distributed and how much Sun would receive. Mr. Schappel then described his understanding of how the distribution would be made based on the written agreements among the parties. First, all debt to Members would be repaid in full, including interest. Mr. Schappel and Mr. Kittleson calculated this amount to be approximately $5,577,000 from [CDS] financial statements they had in their possession. Second, the Class A membership interests of $2,000,000 in [STP] and $4,000,000 in CDS would be retired. Third, the remaining assets of [STP] would be distributed 80% to UICI and 20% to Sun. Mr. Schappel also observed the remaining assets of CDS would be distributed 80% to Ron Jensen and 20% to Sun. Again there was a discussion between the various parties at which time Mr. Howard suggested a short recess. All present agreed.

Schappel disputes the minutes of the February 25, 1998 meeting. Attached to Schappel's affidavit is a copy of Sun's written objections to the minutes. In pertinent part, the objections state:

> The minutes, on Page 4, purport to summarize comments made by Mr. Schappel regarding the distribution of proceeds following the sale of [STP]. This "summary," and every statement in it, is a complete fabrication and is false. Mr. Schappel did not in any way state, infer or imply any of the comments attributed to him in this section of the minutes. Further, to the extent that this section of the minutes state or infer that Sun, Mr. Shappel or [Mr. Kittleson] in any way agreed with the other parties present regarding any such distribution, it is also inaccurate and false. Sun objects to the minutes on these grounds.

A fact issue exits on the face of these opposing affidavits. UICI and Jensen contend that the funds were to be distributed in accordance with their view. Moreover, they contend that Sun agreed to their proposed distribution. Sun vigorously disputes that contention. Summary judgment is not proper

in the face of material issues of fact. We sustain Jensen's second issue and STP and CDS's second issue.[2]

## The Securities Act[3]

In UICI's first through fourth issues and Jensen's fourth issue, they contend the trial court erred in granting Sun's motion for summary judgment and denying their motion for summary judgment on the violation of the Securities Act. To show that UICI and Jensen violated the Securities Act, Sun had to prove that UICI and Jensen violated a provision of the Act and that because of that violation, it is entitled to avoid the Agreement.

In the trial court, Sun alleged that UICI and Jensen violated the following provision of the Act:

> In connection with the sale, offering for sale or delivery of, the purchase, offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities, whether or not the transaction or security is exempt under Section 5 or 6 of this Act, directly or indirectly:
>
> (3) knowingly make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading;

TEX. REV. CIV. STAT. ANN. art. 581-29(C)(3) (Vernon Supp. 2000). Contracts made in knowing violation of any provision of the securities act are unenforceable by the violator. TEX. REV. CIV. STAT. ANN. art. 581-33(K) (Vernon Supp. 2000). Sun contends that UICI and Jensen cannot enforce the Agreement because it was not publicly disclosed in violation of securities laws. The Securities and Exchange Act requires publicly traded companies to disclose certain transactions through filings with the Securities and Exchange Commission. *See* 15 U.S.C. § 78m (1997).

---

[2]In light of our disposition of Jensen's second issue, we do not address Jensen's first and third issues.

[3]TEX. REV. CIV. STAT. ANN. art. Art. 581-1 (Vernon 1964 & Supp. 2000).

Sun contends UICI and Jensen violated article 581-29(C)(3) when they failed to publicly disclose the Agreement and the preferential transfers. Although, UICI disclosed this information in 1998 through its filing of schedule 14A with the Securities and Exchange Commission, Sun contends it should have been disclosed in 1996 and 1997.

In response to the motion for summary judgment, UICI and Jensen presented the affidavit of Vernon Woelke, vice president and treasurer of UICI. Woelke testified that any failure to report the related party transactions consummated through the Agreement was an oversight. This summary judgment evidence raises a fact issue as to whether UICI *knowingly* failed to report the Agreement as required by the Securities and Exchange Commission. Accordingly, the trial court erred in granting summary judgment on Sun's cause of action for securities violations. We sustain UICI's first through fourth issues and Jensen's fourth issue.

## Fiduciary Duty

In its tenth issue, UICI contends the trial court erred in concluding that it owed a fiduciary duty to Sun as a matter of law.[4] Sun contends that UICI owed it a fiduciary duty in light of the fact that UICI was the majority shareholder, owning eighty percent of STP's shares.

The limited liability company act provides:

> To the extent that at law or in equity, a member, manager, officer, or other person has duties (including fiduciary duties) and liabilities relating thereto to a limited liability company or to another member or manager, such duties and liabilities may be expanded or restricted by provisions in the regulations.

TEX. REV. CIV. STAT. ANN. Art. 1528n, art. 2.20B (Vernon Supp. 2000). STP's articles of incorporation provide that "Members of this Company have a duty of undivided loyalty to this

---

[4]In his fifth issue, Jensen contends the trial court erred in ruling that "as a matter of law," he owed a fiduciary duty to Sun. The trial court's judgment references the stipulation regarding the diminished value claim. UICI, STP, and Sun are the parties to the stipulation. The judgment states, "As a matter of law, there exists a fiduciary duty supporting the Diminished Value Claim." The trial court ruled that UICI, not Jensen, owed a fiduciary duty to Sun.

Company in all matters affecting this Company's interests."

There is no Texas case addressing fiduciary duties between members in a limited liability company. This Court has addressed the existence of fiduciary duties between co-shareholders in a closely held corporation. *Schoelkopf v. Pledger*, 739 S.W.2d 914, 920 (Tex. App.–Dallas 1987), *rev'd on other grounds*, 762 S.W.2d 145 (Tex.1988). We turn to our opinion in *Schoelkopf* for guidance. Schoelkopf owned C & C Aircraft Services. Schoelkopf was also one of three equal shareholders of Midway Aircraft Sales, Inc. C & C and Midway shared the same hangar. C & C wanted to sell Cessna airplanes. However, Midway's lease gave it the exclusive right to sell airplanes at the hangar. Schoelkopf persuaded the other two shareholders to transfer Midway's loans to a bank where he did business. He promised the shareholders that he could help Midway obtain better lines of credit at the new bank. Midway's loans were transferred to the new bank and each shareholder personally guaranteed the loans. Soon after, Schoelkoph withdrew his guarantee and Midway went into bankruptcy. *Id.* at 916-17.

One of Midway's shareholders sued Schoelkopf for, among other things, breach of his fiduciary duty as a co-shareholder. This Court has held that although a fiduciary duty may exist between co-shareholders in a closely held corporation, "we are unwilling to apply it as a matter of law to all shareholders of closely held corporations." *Schoelkopf*, 739 S.W.2d at 920, *see also Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.–Houston [14th Dist.] 1997, no writ). Whether a fiduciary relationship exists is a question of fact dependent upon the unique circumstances of each case. *Kaspar v. Thorne*, 755 S.W.2d 151, 155 (Tex. App.–Dallas 1988, no writ).

In its modified judgment and order of dissolution, the trial court stated, "As a matter of law, there exists a fiduciary duty supporting the Diminished Value Claim." The trial court made a legal

conclusion that UICI owed a fiduciary duty to Sun. Except in limited circumstances, the existence of a fiduciary relationship is a fact question. *See Kaspar*, 755 S.W.2d at 155. The statute governing limited liability companies does not mandate a fiduciary relationship between members. STP's regulations provide that its members owe a duty of undivided loyalty to the *company*. Neither the statute nor STP's regulations give authority to the trial court to find a fiduciary duty between STP's members as a matter of law.

We recognize that *Schoelkopf* involved equal shareholders and Sun and UICI are not equal shareholders. However, we do not think this fact changes this Court's holding that the existence of a fiduciary relationship between co-shareholders is a fact question. This unequal stance is a fact to be taken into consideration by the factfinder. We conclude the trial court erred in concluding that UICI owed Sun a fiduciary duty as a matter of law. We sustain UICI's tenth issue to the extent that the trial court erred in ruling on the fiduciary duty issue as a matter of law. We remand the fiduciary duty issue to the trial court for a determination by the factfinder.

### Counterclaims

In issues seven and eight, Jensen contends the trial court erred in granting summary judgment in favor of Sun on Jensen's counterclaims for fraud, negligent misrepresentation, quantum meruit, promissory estoppel, and unjust enrichment. These counterclaims relate to the interpretation of the Agreement. We have held that fact issues exist on the proper interpretation of the Agreement. Thus, the trial court erred in granting summary judgment on Jensen's counterclaims. We sustain Jensen's seventh and eighth issues and remand these counterclaims to the trial court.

### Attorney Disqualification

In their first issue, STP and CDS argue that the trial court erred in denying their motion to

disqualify Douglas Kittleson, one of Sun's attorneys. They moved to disqualify Kittleson because he was counsel for STP during the negotiation for the sale of STP's assets.

We review a trial court's decision on a motion to disqualify under an abuse of discretion standard. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). We will reverse the trial court's decision only where the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Metropolitan Life Ins. Co. v. Synek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994).

Rule 1.09(a)(3) of the Texas Disciplinary Rules of Professional Conduct provides: "Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client: . . . (3) if it is the same or a substantially related matter." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3), *reprinted in* TEX. GOV'T CODE ANN. § tit. 2, subtit. G app. A (Vernon 1998). The Texas Disciplinary Rules of Professional Conduct do not determine whether an attorney is disqualified, rather they provide guidelines and suggest the relevant considerations. *National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996). The party seeking disqualification must prove a prior existence of an attorney-client relationship involving factual matters related to the present litigation and that there is a genuine threat that confidences revealed to the attorney will be revealed to the present adversary. *National Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989). Once the party meets this burden, an irrebuttable presumption arises that confidences were revealed by the attorney. *Id.* However, an attorney should not be disqualified for violating a disciplinary rule when the violation has not resulted in actual harm to the party seeking disqualification. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998).

STP and CDS contend that Kittleson, through his prior representation, obtained information relevant to the value of STP's assets. This information, STP and CDS further contend, bears directly on Sun's diminished value claim. This information has been publicly disclosed. For this reason, STP and CDS cannot meet their burden of showing the existence of a genuine threat that confidences revealed to Kittleson will be revealed to Sun. Moreover, Sun and STP have stipulated as to the diminished value. Thus, STP and CDS cannot show harm in light of the stipulation as to the diminished value claim. *See In re Meador*, 968 S.W.2d at 350. We conclude the trial court did not abuse its discretion in denying the motion to disqualify. We overrule STP and CDS's first issue.

## Conversion

In issue four, STP contends the trial court erred by granting summary judgment that STP take nothing on its claim for conversion/misappropriation against Schappel. STP claimed that Schappel, while president of STP, converted or misappropriated STP funds to pay premiums on his life insurance policy with his wife as the beneficiary. Schappel moved for summary judgment on the ground that the claim had been released.

A facially valid release completely bars any later action on the matters the release covers. *Deer Creek Ltd. v. North American Mortgage Co.*, 792 S.W.2d 198, 201 (Tex. App.–Dallas 1990, no writ). A release binds only those parties named therein. *Dwyer v. Sabine Mining Co.*, 890 S.W.2d 140, 143 (Tex. App.–Texarkana 1994, writ denied). However, the party does not have to be specifically named in the release. A party that can be readily identified from the language of the release is properly bound thereby. *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 113-14 (Tex. App.–Houston [14th Dist.] 1991, writ denied).

Schappel relied on a release executed by UICI and Schappel on October 27, 1997. That

release provides, in pertinent part:

> UICI, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, does for itself, for its affiliates, and for its successors and assigns, forever release, discharge and acquit Richard Schappel and his respective agents, successors, assigns, representatives, affiliated corporations, affiliated partnerships, officers, employees, directors, attorneys, insurance carriers, subsidiaries, divisions, and each and every other person, partnership, firm or corporation in privity with Richard Schappel that are or might be liable, directly or indirectly, fixed or contingent, of and from any and all claims, demands, liabilities, obligations, debts, agreements, liens, security interests, claims or causes of action, which have been or which might have been asserted, including and arising out of that certain letter agreement dated March 4, 1997 from W. Brian Harrigan and/or UICI, which letter agreement is hereby terminated.

As part of its summary judgment evidence, Schappel included the deposition testimony of Mark Hauptman, personal financial assistant to Jensen. Hauptman played a major role in negotiating and drafting the release between Schappel and UICI. Hauptman testified that the term UICI "affiliates" included STP and CDS. STP argues that the release does not apply to it because it is not specifically named in the release. Affiliate means to join or become connected with. BALLENTINE'S LAW DICTIONARY 45 (3d ed. 1969). UICI was a member of STP, owning eighty percent of its stock. We conclude that, at the time of the Schappel/UICI release, STP was an affiliate corporation of UICI, and, thus, it was covered under the release. The trial court properly granted summary judgment that STP take nothing on its claims against Schappel for conversion/misappropriation. We overrule STP's fourth issue.

We affirm the trial court's summary judgment that STP take nothing on its claims for conversion/misappropriation. As to the remainder of the claims, we reverse the trial court's

judgment and remand this case for a new trial.[5]

_____
CAROLYN WRIGHT
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
990213

---

[5]In issue three, STP and CDS contend the trial court erred in rendering summary judgment dissolving STP and CDS. We reverse the trial court's judgment, partly because of fact issues regarding the proper distribution of the proceeds from the sale of STP's assets. For this reason, the trial court's judgment dissolving STP and CDS is likewise reversed. Accordingly, we do not address STP and CDS's third issue.