**Henry N. KASPAR, Appellant,**

v.

**Lansing S. THORNE, Appellee.**

**No. 05–87–00750–CV.**

Court of Appeals of Texas, Dallas.

May 2, 1988.

Supplemental Opinion on Rehearing July 29, 1988.

Paul H. Stanford, Jr., Ted M. Akin, Thomas M. Herrin, Dallas, for appellant.

W. Pruitt Ashworth, R. Scott Steinbach, Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

STEWART, Justice.

Lansing S. Thorne sued Henry N. Kaspar, seeking: 1) declaratory judgment that Kaspar was liable under a certain promissory note; 2) money damages for breach of fiduciary duty owned to Thorne by Kaspar; and 3) appointment of a receiver to liquidate F.F.P., Inc., the corporation in which Kaspar and Thorne each own fifty percent of the capital stock. After a jury trial, the trial court granted the declaratory judgment, declaring that the promissory note was "enforceable and collectable against Henry N. Kaspar," and awarding Thorne $18,000.00 in attorney's fees. The judgment also awarded Thorne $16,185.91 for Kaspar's breach of fiduciary duty and appointed Thorne as receiver to liquidate F.F. P. In addition, the court awarded Thorne $11,919.05 as his share in F.F.P. after dissolution.

Kaspar raises five points of error, contending that: 1) the trial court lacked statutory authority to appoint Thorne as receiver to liquidate F.F.P., Inc.; 2) the court erred in permitting recovery on the promissory note payable to F.F.P. when suit was not brought by or on behalf of F.F.P.; 3) the court erred in awarding Thorne his share in F.F.P. after dissolution because the determination was based upon estimated expenses of the receivership; 4) the trial court erred in submitting jury instructions assuming that Kaspar owed Thorne a fiduciary duty; and 5) the court erred in awarding to Thorne damages for breach of a fiduciary duty owed to F.F.P. and not to Thorne.

We agree that the trial court lacked statutory authority to appoint a receiver to liquidate the corporation. We further conclude that the court erred in granting Thorne a declaratory judgment of the rights under a note owed to F.F.P. Finally, we hold that the court erred in awarding damages to Thorne personally because there was no jury finding that Kaspar owed a fiduciary duty to Thorne. Consequently, we reverse the judgment of the trial court.

### The Facts

Kaspar and Thorne first met thirty years ago and began doing business together in 1982. Their business association began as a partnership, and then they incorporated as F.F.P., Inc. The business of the corporation was real estate development. The corporation purchased twelve lots in Chandlers Landing, a housing development on

Lake Ray Hubbard in Rockwall County, Texas. The corporation constructed six houses on the lots. F.F.P., Inc. acquired the financing for the purchase of the lots and the construction of the houses from Mercantile Bank.

Kaspar purchased one of the Chandlers Landing houses from F.F.P., Inc. The evidence is conflicting as to why Kaspar bought the house. Kaspar testified that Mercantile Bank wanted F.F.P. to decrease its indebtedness to the bank. Thus, Kaspar and Thorne each agreed to purchase a house from F.F.P., Inc. so that F.F.P. could take the purchase money and pay off the bank. Thorne testified that Kaspar had always wanted the Chandlers Landing house; in fact, Kaspar oversaw the construction and had it built to his specifications. In any event, Kaspar purchased the house, giving F.F.P. $110,400.00 in cash. The balance of the purchase price, $32,-371.62, was in the form of a real estate lien note payable by Kaspar to F.F.P.

The real estate lien note contained the following provision: "This note is to become null and void upon payment in full of all indebtedness owed to Mercantile National Bank at Dallas by F.F.P., Inc." Thorne testified that this language was added by Kaspar without his knowledge after Thorne reviewed the note. Kaspar testified that the language was there as part of his and Thorne's understanding that his purchase of the house was to accommodate the bank's request that F.F.P.'s indebtedness be decreased. Thus, the note would be inoperative once the indebtedness to the bank was paid. The jury apparently believed Thorne, and found, in response to the first special issue, that Kaspar had added the disputed clause without the authority or approval of Thorne.

### Liquidation and Receivership

Upon Thorne's motion, the trial court appointed him receiver with authority to dissolve F.F.P., Inc. In his initial point of error, Kaspar argues that the Business Corporation Act does not authorize the appointment of a receiver to liquidate a corporation in these circumstances. We agree.

Article 7.06 of the Business Corporation Act authorizes the court to order the liquidation of the assets and business of a corporation and to appoint a receiver to effect the liquidation. The court may do so, however, only in the following instances:

(1) When an action has been filed by the Attorney General, as provided in this Act, to dissolve a corporation and it is established that liquidation of its business and affairs should precede the entry of a decree of dissolution.

(2) Upon application by a corporation to have its liquidation continued under the supervision of the court.

(3) If the corporation is in receivership and no plan for remedying the condition of the corporation requiring appointment of the receiver, which the court finds to be feasible, has been presented within twelve (12) months after the appointment of the receiver.

(4) Upon application of any creditor if it is established that irreparable damage will ensue to the unsecured creditors of the corporation, generally, as a class, unless there be an immediate liquidation of the assets of the corporation.

TEX.BUS.CORP.ACT ANN. art. 7.06(A) (Vernon 1980). There has been no action by the Attorney General, nor an application by a creditor. The record does not establish that F.F.P., Inc. has been in receivership for twelve months with no plan for remedying the condition of the corporation. Thus, the only remaining rationale for liquidation is that in section (A)(2): "Upon application by a corporation to have its liquidation continued under the supervision of the court."

We need not decide whether Thorne was acting for the corporation in requesting the appointment of a receiver to liquidate F.F.P. The statute speaks of *continuing* liquidation. When article 7.06 is read together with article 6.04(A)(4), it becomes clear that the corporation must decide to dissolve before the liquidation receivership of article 7.06 commences. The corporation, through the consent of shareholders or by an act of the corporation, may be dissolved. TEX. BUS.CORP.ACT ANN. arts. 6.02, 6.03

(Vernon 1980). After such a decision to dissolve, and before filing articles of dissolution with the Secretary of State, the corporation takes steps to wind up, or liquidate, the corporation. TEX.BUS. CORP.ACT ANN. art. 6.04 (Vernon Supp. 1988). Thus, the decision to dissolve is made before liquidation commences. During the liquidation, "the corporation ... may make application to any district court of this State in the county in which the registered office of the corporation is situated to have the liquidation continued under the supervision of such court as provided in this Act." *Id.* art. 6.04(A)(4).

Dissolution may be authorized by the written consent of all of the shareholders or by board resolution and a two-thirds vote of the stockholders. *Id.* arts. 6.02, 6.03. The record in this case is silent as to a decision to dissolve the corporation except for Thorne's unilateral motion to liquidate. Unless Kaspar joins him, in writing, there can be no dissolution. *Id.* art. 6.02. Without a decision to dissolve, there can be no liquidation under article 7.06(A)(2).

We hold that article 7.06 does not provide the trial court authority to appoint a receiver to liquidate F.F.P., Inc. Consequently, we sustain Kaspar's first point of error. Because we reverse the court's appointment of a receiver to liquidate F.F.P., we must also reverse the court's award of $11,919.05 to Thorne as his share in F.F.P. after dissolution. Thus, Kaspar's third point of error complaining of the liquidation plan resulting in this award is rendered moot.

### Capacity v. Right to Sue

In his second point of error, Kaspar contends that the court erred in declaring F.F.P.'s rights under the note when Thorne, rather than F.F.P., requested the declaratory judgment. In his fourth and fifth points of error, Kaspar argues that the court erred in awarding Thorne damages for breach of fiduciary duty when the only duty Kaspar owed was to F.F.P. and not to Thorne. Thorne replies that Kaspar has waived his contentions by failing to file a verified denial of Thorne's right to recover in the capacity in which he sues. Kaspar responds that the issue is not capacity but right to sue, verified denial of which is not required. We agree with Kaspar.

We turn first to Thorne's right to seek a declaration that F.F.P.'s note is enforceable. The resolution of this issue rests on whether Thorne was suing as an individual or as a representative of F.F.P. If he were suing as F.F.P.'s representative, he would certainly have the right to seek a declaration of F.F.P.'s rights. However, Thorne does not allege in his pleadings that he is suing as F.F.P.'s representative. He alleges that he and Kaspar were in disagreement over which one of them was president of F.F.P., and asks for a declaration that he is F.F.P.'s president. Even if Thorne were president of F.F.P., he would not, by virtue of that position alone, be able to conduct litigation for the corporation. Absent corporate bylaws or a resolution of the board of directors so providing, the president has no authority to conduct litigation for the corporation. *Valley International Properties, Inc. v. Brownsville Savings and Loan Association*, 581 S.W.2d 222, 227 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Square 67 Development Corp. v. Red Oak State Bank*, 559 S.W.2d 136, 138 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Thorne did not allege in his petition that such a bylaw or resolution existed, and there is no such evidence in the record. Thus, we conclude that Thorne was not suing in a representative capacity.

Thorne, as an individual shareholder, has no right to sue to enforce a corporate obligation. *Massachusetts v. Davis*, 168 S.W. 2d 216, 221 (Tex.1942); *Schoellkopf v. Pledger*, 739 S.W.2d 914, 921 (Tex.App.— Dallas 1987, writ pending); *First State Bank of Euless v. Bolinger*, 431 S.W.2d 782, 784 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). A shareholder may bring a derivative action in the right of a corporation, but only if the shareholder meets the requirements set forth in the Texas Business Corporation Act. *See* TEX.BUS. CORP.ACT.ANN. art. 5.14 (Vernon 1980). In order to bring a derivative suit, the shareholder's pleading must state with par-

ticularity the efforts he has made to have the suit brought for the corporation by its board of directors, or his reasons for not making any such efforts. *Dodson v. Kung,* 717 S.W.2d 385, 390 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Thorne has made no such allegation in his pleadings; thus, we conclude that Thorne had no right to seek declaratory judgment establishing F.F.P.'s rights under the promissory note.

■ Thorne contends that Kaspar has waived his contention that Thorne is not entitled to sue regarding the note. The contention that a plaintiff is not entitled to recover in the capacity in which he sues must be pled specifically and under oath. TEX.R.CIV.P. 93(2). Only if a plaintiff is seeking recovery in a representative capacity, however, does it become necessary for a defendant to deny plaintiff's capacity under rule 93. *Brans v. Office Building Managers, Inc.,* 593 S.W.2d 414, 415 (Tex.Civ.App.—Dallas 1980, no writ). We have concluded that Thorne is not suing in any capacity other than his own. To require Kaspar to file a verified denial in this case would be to require him to deny under oath that Thorne has a cause of action. Rule 93 does not impose such a requirement. *Schoellkopf,* 739 S.W.2d at 921. We sustain Kaspar's second point of error.

■ We turn next to Thorne's right to recover for breach of fiduciary duty. We reiterate that Thorne's petition makes it clear that he sues in no capacity other than his own. A corporate shareholder has no individual cause of action for personal damages caused solely by wrong done the corporation, even though he may be injured by that wrong. *Davis,* 168 S.W.2d at 221; *Schoellkopf,* 739 S.W.2d at 918. Thus, Thorne, as an individual, cannot recover from Kaspar for a wrong committed by Kaspar against F.F.P. Thorne may, however, sue for violation of his own individual rights by Kaspar regardless of whether the corporation also has a cause of action. *Schoellkopf,* 739 S.W.2d at 918. Thus, we must determine whether Thorne is entitled, upon this verdict and record, to recover for

a violation of his individual rights by Kaspar.

■ The trial court submitted the following special issue to the jury:

DO YOU FIND THAT HENRY N. KASPAR ("KASPAR") BREACHED HIS FIDUCIARY DUTY TO LANSING THORNE?

In answering this special issue, you are instructed that Kaspar can breach his fiduciary duty by using data or knowledge obtained, in whole or in part, as a result of his relationship with F.F.P., Inc. and/or Thorne or by acting inconsistently with the duty of acting with faithfulness and loyalty to F.F.P., Inc. and/or Thorne.

A "Fiduciary" is a person, corporation, or other legal entity who or which is in a position of trust in regard to another person, corporation, or other legal entity. In this case, as a matter of law, you are instructed that Kaspar is a fiduciary of Thorne and that the burden of proving reasonableness of his conduct rests upon Kaspar.

The jury found that Kaspar breached his fiduciary duty to Thorne. No issue was submitted to the jury inquiring whether Kaspar owed a fiduciary duty to Thorne; rather, the trial court defined Kaspar as a fiduciary as a matter of law and assumed the existence of a duty of acting with faithfulness and loyalty to Thorne. In *Schoellkopf* this Court rejected the argument that, as a matter of law, "a co-shareholder in a closely held corporation should owe an implied duty of good faith and fair dealing to his co-shareholders." *Id.* at 920. The Court recognized that such a duty may exist in some circumstances; however, the court noted that "[w]hether a fiduciary relationship exists in any particular situation is usually a question for the factfinder." *Id.*

In this case, the question of fiduciary duty was not placed before the factfinder. In fact, the court instructed the jury that a fiduciary duty existed as a matter of law. Such instruction was erroneous; after reviewing the record, we are not persuaded that the existence of a fiduciary duty was

conclusively established. Thus, the verdict does not support a recovery for Thorne.

Thorne argues that Kaspar owed a duty to the corporation and that Kaspar cannot now complain of Thorne's recovering in lieu of F.F.P.'s recovering because Kaspar did not deny Thorne's capacity to recover as required by rule 93(2). Thorne's argument was rejected in *Schoellkopf*. As in *Schoellkopf*, the problem in this case is not one of capacity. Rather, the issue is whether the record and the verdict support the judgment. *See Schoellkopf*, 739 S.W.2d at 921. We conclude that the judgment is not supported by the verdict or by conclusively established evidence in the record. Consequently, we sustain points of error four and five.

### Disposition

Having sustained Kaspar's points of error, we reverse the judgment of the trial court. Although the disposition of these points would entitle Kaspar to the rendition of a judgment in his favor, we are bound by the prayer in his brief wherein he requests only that we reverse and remand for new trial. Nothing is better established than the proposition that relief that has not been prayed for on appeal cannot be granted. *Texas Federal Savings and Loan Association v. Sealock*, 737 S.W.2d 870, 877 (Tex.App.—Dallas 1987, writ granted); *West End API, Ltd. v. Rothpletz*, 732 S.W.2d 371, 374 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Consequently, we reverse the cause and remand for further proceedings consistent with this opinion.

### SUPPLEMENTAL OPINION ON REHEARING

On original submission, we reversed this cause and remanded for new trial because Kaspar asked only for remand and not for rendition in his prayer for relief. We grant Kaspar's motion for rehearing and reverse and render judgment that Thorne take

1. Reference to rules shall be to the rules of appellate procedure, unless otherwise designated.

nothing against Kaspar and that the receivership be dissolved.

In holding that the disposition of the case was dictated by Kaspar's prayer for remand, we cited *Texas Federal Savings and Loan Association v. Sealock*, 737 S.W.2d 870 (Tex.App.—Dallas 1987), *rev'd on other grounds*, 755 S.W.2d 151 (1988) and *West End API, Ltd. v. Rothpletz*, 732 S.W.2d 371 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). After reconsideration, we conclude that *West End* and *Texas Federal* are distinguishable. Further, we determine that our holding placed undue emphasis on the prayer and was contrary to the rules of appellate procedure.

### Analysis of Appellate Rules

Rule 74 [1] sets out the requisites of briefs in this court. Rule 74(g) succinctly states, "The nature of the relief sought *should* be clearly stated." (Emphasis added). Amongst the "shalls" in the other sections of rule 74, section (g) appears less than mandatory. Further, rule 74(p) provides that briefing rules are to be liberally construed. The supreme court has held that rule 74(p), read in conjunction with rule 83, prevents an appellate court from reversing or affirming a judgment because of briefing irregularities, whether of form or of substance. *Inpetco, Inc. v. Texas American Bank/Houston*, 729 S.W.2d 300 (Tex. 1987). Before the reviewing court can dispose of the case on the basis of briefing defects rather than on the basis of the merits, the party must be given an opportunity to rebrief. *Id.* at 300; TEX.R.APP.P. 74(p).

These rules suggest that the prayer's irregularity of form or substance does not limit the relief available to a party. To the extent that the error is flagrant, the court may order a party to redraft his prayer. However, the rules prevent this court from tailoring its relief because of the violation of briefing rules without first giving the errant party an opportunity to

cure the defect. *Inpetco*, 729 S.W.2d at 300. Thus, we conclude that this court is not limited to remand of the cause because of a party's omission of a request for rendition when the disposition of a party's points entitles him to rendition.

The language of rule 83 supports this conclusion. The rule provides:

> When the judgment or decree of the court below shall be reversed, the court *shall proceed to render* such judgment or decree as the court below should have rendered, *except when it is necessary to remand* to the court below for further proceedings.

TEX.R.APP.P. 81 (emphasis added). The first portion of the rule sets out the general procedure after reversal: rendition of the correct judgment. The second portion, in the form of an exception, allows for necessary remands. Thus, rule 81 shows a clear preference for rendition, although remand is allowed in appropriate cases.

The purpose for the rule is apparent. In discussing its predecessor statute, the supreme court has expressed its purpose as follows:

> The evident purpose of the statute was two-fold: First, to require such courts to finally dispose of cases submitted to them, and thus save the time and expense of repeated hearings, where the same could be done with substantial justice to the parties, and without disregarding the substantial rights of either; and also to secure to the complaining party the full benefit of the judgment improperly denied to him by the lower court.

*Sovereign Camp, W.O.W. v. Patton*, 117 Tex. 1, 6, 295 S.W. 913, 915 (1927) (construing article 1856 of the 1925 Revised Civil Statutes).[2]

Thus, we conclude that the strong preference for rendition, expressed in rule 81 and supported by sound policy, overrides Kaspar's failure to request in his prayer that this court render the judgment that should have been rendered by the trial court.

This conclusion is inescapable in light of the mandatory nature of rule 81. *See Patton*, 295 S.W. at 915 (article 1856 "is in its terms mandatory"); Calvert, *Appellate Court Judgments*, 6 TEX.TECH L.REV. 915, 919 (1975) (rule 434 of the rules of civil procedure imposes a "mandatory duty" upon the court). We hold that it is rule 81, and not the prayer for relief, that determines the disposition of the case. Rule 81 sets out two possible dispositions when this court chooses to reverse a lower court's judgment: rendition and remand. This court has some discretion in deciding between these two options. *Patton*, 295 S.W. at 915. It has been suggested, however, that the appellate court, in some circumstances, will have no option but to render because of the state of the record. *Id. Patton* does not suggest that the issue is decided based upon the prayer; rather, the disposition is determined from the rule and the record of the case.

### Analysis of Case Authority

In *West End*, 732 S.W.2d 371, this court posed the rhetorical question, "What can be better established than the proposition that relief that has not been prayed cannot be granted?" *Id.* at 374. In that case, the appealing parties asked that this court render judgment in their favor; they did not request remand for new trial. This court concluded that this prayer required us to consider only those points of error that could lead to rendition. In *Texas Federal*, 737 S.W.2d 870, this court also looked to the prayer to determine whether we should address certain assigned errors.

The case at bar is in a different procedural posture. We are not attempting to ascertain whether to address certain points of error; we are faced with the disposition of a case based upon our resolution of meritorious points of error raised by the appellant arising from relief granted by the trial court. Thus, *West End* and *Texas Federal* are distinguishable.

We conclude that the supreme court's reasoning in *Texas Prudential Insurance*

---

2. Article 1856 originated as Law of April 13, 1892, ch. 15, § 36, 1892 Tex.Gen.Laws 25, 31, 10 H. GAMMEL, LAWS OF TEXAS 389, 395 (1898). Article 1856 was repealed by the enactment of the rules of civil procedure, and codified as rule 434 of the rules of civil procedure. Rule 434 is now rule 81 of the rules of appellate procedure.

*Co. v. Dillard,* 158 Tex. 15, 307 S.W.2d 242 (1957) is applicable to our case. In *Dillard,* the court expressed reservations, because of the state of the record, about rendering judgment rather than remanding in that case. The court noted that the disposition of the points of error required a reversal and rendition, unless the court concluded that remand of that case was appropriate because the cause had not been fully developed at trial. The court then noted that the respondent had not requested remand should the petitioner's position be upheld; thus, the court concluded that the respondent considered the issues fully developed from her standpoint. Accordingly, the court rendered judgment for the petitioner. *Id.* 307 S.W.2d at 252.

Likewise, in the case at bar, appellee Thorne has not requested remand in the event we sustained Kaspar's points of error. Thus, we assume, as did the *Dillard* court, that Thorne perceives no grounds for remand. Accordingly, because our holdings require a reversal of the trial court's judgment and a rendition of judgment in Kaspar's favor, there is no necessity to remand the case to the court below for further proceedings under rule 81.

### *Conclusion*

We hold that the rules of appellate procedure mandate rendition of judgment when supported by the record and the assigned errors in a party's brief. Although a brief should include a proper prayer for relief, the omission of a prayer for rendition of judgment will not preclude rendition in an appropriate case. TEX.R.APP.P. 74(g), 74(p), 81.

Because we found reversible error on original submission, we reversed the trial court's judgment. Pursuant to rule 81, we must now proceed to render the judgment that the trial court should have rendered. Accordingly, we render judgment that Thorne take nothing against Kaspar. Further, the trial court's judgment appointing a receiver is vacated.