**John M. WHITE d/b/a Alba Corporation, Appellant,**

v.

**INDEPENDENCE BANK, N.A., Appellee.**

No. 01–89–00928–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 1990.

Rehearing Denied Sept. 13, 1990.

**896**

Gene E. Putnam, Edward E. Lindsay, Houston, for appellant.

Jay H. Dushkin, Houston, for appellee.

Before EVANS, C.J., and O'CONNOR and DUNN, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a summary judgment. We affirm.

In 1984, after a fire at John White's residence, he hired Jansen & Company to help him collect for the fire loss. White agreed to assign 7% of the recovery to Jansen & Company. Cambridge Mutual Fire Insurance Company (the insurance company) was the insurer, and was informed that Jansen & Company was to receive 7% of the total claim. Before White settled the claim with the insurance company, White fired Jansen & Company. White did not inform the insurance company that he had terminated his contractual relationship with Jansen & Company.

The insurance company submitted the draft for the fire loss with two payees—John M. White and Jansen & Company. White asked Jansen & Company to endorse the draft, but Jansen & Company refused unless it would get its assigned interest.

After failing to get Jansen & Company's endorsement, White typed "Jansen & Company" on the back of the draft, and signed his name as the endorser. White then presented the draft to Independence Bank ("the collecting bank") for deposit into the account of Alba Corporation.[1] White did not tell the insurance company or the collecting bank of his dispute with Jansen & Company. When White deposited the draft, the collecting bank gave the Alba Corporation account immediate conditional credit of the funds.

When the collecting bank presented the draft (through a correspondent bank) for payment, the draft was refused for lack of endorsement. The insurance company refused to honor the draft until Jansen & Company endorsed it, and the draft was returned to the collecting bank. When the draft was returned to the collecting bank, the bank charged those funds back to the Alba Corporation's account.

White filed suit against several defendants who are not parties to this appeal. The collecting bank filed an interpleader action because the action involved the funds from the returned draft. White filed a counterclaim against the collecting bank, alleging the collecting bank violated the Deceptive Trade Practices Act, the Texas Business and Commerce Code, and the Texas Uniform Commercial Code, and breached various express and implied warranties.

The parties agreed to the interpleader, and the court entered an order for the collecting bank to transfer the contested funds to the trial court's registry. The collecting bank transferred a total of $43,060.80 to the registry. By another order, the funds were disbursed from the court's registry by agreement. White received $41,360.80, and Jansen & Company (not a party on appeal) received $1,700.

1. White is the vice-president of Alba Corpora- tion.

After disbursement, the collecting bank filed a motion for summary judgment, alleging there were no genuine issues of material fact on any of the theories asserted in White's counterclaim. The trial court scheduled a hearing on the motion for summary judgment and, on the day of the hearing, White filed a motion for leave to file a response to the collecting bank's motion. The trial court denied White's motion for leave, and granted the collecting bank's motion for summary judgment. The trial court entered a final judgment for the collecting bank, awarding it attorney's fees, costs, and post-judgment interest. White recovered nothing under his counterclaim.

White claims the collecting bank did not have the right to charge back the funds to the Alba Corporation's account. White admits that any credits to the account were conditional until the collecting bank received cash payment on drafts. White's theory of liability is that the collecting bank was required to notify him within 24 hours that the draft had been refused. Because the collecting bank did not notify him until after 24 hours, White believes he was entitled to keep the funds.

Before we examine the law in this case, we note that White received $41,360.80 for the settlement of the fire loss claim. White is not, therefore, bringing suit for funds that he was not able to recover from the fire claim. Instead, White wants this Court to impose some form of liability on the collecting bank because it gave him late notice that the draft was refused for lack of proper endorsement. When you recall that White admitted he presented the draft to the collecting bank without proper endorsement, it is difficult to conceive how the bank could be liable for charging back the funds, late notice or not. White wants this Court to create a "24 hour rule": If a collecting bank does not notify a customer within 24 hours that the draft the customer presented for collection was refused because the customer forged the endorsement, the customer gets to keep the money.

## I. Standard of review

To sustain a summary judgment, the movant must show, as a matter of law, that there are no genuine issues of material fact. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 539 (Tex. App.—Houston [1st Dist.] 1988, writ denied). A summary judgment that disposes of the entire case is proper only if, as a matter of law, plaintiff could not succeed upon any of the theories pleaded. *Lumpkin*, 755 S.W.2d at 539. In deciding whether there is a disputed material fact issue that precludes summary judgment, the court must take evidence favorable to the non-movant as true, and indulge every reasonable inference in favor of the non-movant. The court must resolve any doubts in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## II. Summary judgment proof

In the first and second points of error, White contends the trial court erred in granting summary judgment. White argues that the collecting bank did not show there was no genuine issue of material fact, or that White could not succeed upon any of the theories he plead.

### A. *White's standing*

■ White filed his suit against the collecting bank in his name and alleged in the pleadings that he was a customer of the collecting bank. White identified the Alba Corporation's account as his account.

In response to White's counterclaim, the collecting bank filed a verified answer denying that White had standing to bring the suit. The collecting bank re-urged White's lack of standing in its motion for summary judgment.

■ A cause of action for damages to the property of a corporation is vested in the corporation. *Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex.App.—Houston [1st

Dist.] 1988, *aff'd*, 795 S.W.2d 717, 719 (Tex. 1990); *Kaspar v. Thorne*, 755 S.W.2d 151, 154 (Tex.App.—Dallas 1988, no writ). A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. *Wingate v. Hajdik*, 795 S.W.2d at 719. An action for damages to corporate property must be brought by the corporation for obvious reasons: to avoid multiplicity of suits, and so that any recovery will be available to pay the corporation's debts. *Hajdik v. Wingate*, 753 S.W.2d at 201. Even though stockholders may sustain indirect losses, they have no independent right to bring an action for injuries suffered by the corporation. *Id.*[2]

White could not by-pass this rule by filing suit in his name, as doing business in a corporate form. For personal injuries, White could file suit against the collecting bank in his own name. For corporate injuries, White was required to file suit on behalf of the corporation.

If the collecting bank's actions in charging back the account injured anyone, it injured Alba Corporation. The charge back did not injure White individually. The collecting bank has shown that White could not have succeeded under any of the theories asserted in the counterclaim, because

he did not have standing to bring suit for damages to Alba Corporation.[3]

### B. *The collecting bank's defensive theories*

To sustain a summary judgment on defensive grounds, defendant must conclusively prove all essential elements of a defense as a matter of law, and there can be no genuine issues of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

In the collecting bank's answer to the counterclaim, it asserted that White was barred and estopped from recovery because he committed fraud and forgery, was contributorily negligent, made fraudulent misrepresentations to the collecting bank, and violated provisions of the Texas Business and Commerce Code. The collecting bank re-urged these defenses in its motion for summary judgment.

### 1. The Texas Business and Commerce Code

The collecting bank asserts that White violated sections 3.116, 3.417, and 4.207 of the Texas Business and Commerce Code. Section 3.116 defines instruments payable to two or more persons. Section 3.417 discusses presentment warranties.[4] Section 4.207 describes the warranties of

---

**2.** Tex.Bus.Corp.Act Ann. art. 5.14 (Vernon 1980) allows a shareholder to bring a derivative suit. This is not a shareholder's derivative suit.

**3.** Just as White had no standing to sue for Alba Corporation's damages, he also had no authority to sue for the corporation in a representative capacity. *Kaspar*, 755 S.W.2d at 154–55. Absent proof that Alba Corporation gave White the authority to conduct the corporation's litigation, we must assume that White was *not suing in a representative capacity. Id.*

**4.** Section 3.417 states:
(a) Any person who obtains payment or acceptance ... warrants to a person who in good faith pays or accepts, that:
(1) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who had a good title; and
...

(b) Any person who transfers an instrument and receives consideration, warrants to his transferee and if the transfer is by endorsement to any subsequent holder who takes the instrument in good faith that
(1) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
(2) *all signatures are genuine or authorized;* and
(3) the instrument has not been materially altered; and
(4) no defense of any party is good against him. .
Tex.Bus. & Com.Code Ann. § 3.417 (Vernon 1968) (emphasis added).

the customer.[5]

The collecting bank asserts White breached these warranties because White deposited the draft after he had endorsed Jansen & Company's name without Jansen & Company's approval. The endorsement was not genuine, and White knew this when he presented the draft to the collecting bank.

"Good title" means the draft bears no forged endorsements or signatures. *Longview Bank & Trust Co. v. First Nat'l Bank,* 750 S.W.2d 297, 300 (Tex.App.—Fort Worth 1988, no writ). When a party presents a draft for acceptance, and knows the draft is forged, the presenting party breaches the warranty of good title. *Id.* In this case, the facts clearly show that White breached the presentment warranty of good title. He admitted he put Jansen & Company's name on the back of the draft without Jansen & Company's approval.

### 2. Fraud

The collecting bank also asserts as a defense that White acted fraudulently when he presented the draft for payment, because he knew the draft was not properly endorsed. The elements of fraud, based upon misrepresentation, are: (1) a material representation was made; (2) it was false; (3) the speaker knew it was false; (4) the speaker intended the other party to act on it; (5) the other party did rely on the repre-

sentation; and (6) the party suffered injury. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977); *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.,* 709 S.W.2d 262, 264 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd).

The collecting bank argues: White knowingly and falsely represented that he had good title to the draft and the endorsements were genuine; he fraudulently induced the collecting bank to give him provisional credit by typing "Jansen & Company" on the back of the draft; he concealed a material fact (that Jansen & Company had not signed the draft); he intended that the collecting bank rely on the representation; the collecting bank did so rely; and the collecting bank suffered economic loss as a result of the misrepresentation.

After reviewing the summary judgment evidence, we find the collecting bank conclusively proved at least one of its defensive theories.[6] We overrule the first and second points of error.

### III. Attorney's fees

In his third point of error, White claims the trial court erred in awarding attorney's fees to the collecting bank, because there was no evidence to support the award.[7]

In reviewing a no evidence point, this Court considers only the evidence and inferences that support the challenged find-

---

**5.** Section 4.207 states:

(a) Each customer ... who obtains payment or acceptance of an item and each prior customer and collecting bank warrant to the payor bank or other payor who in good faith pays or accepts the item that

(1) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(2) *he has no knowledge that the signature of the maker or drawer is unauthorized* ...

(3) the item has not been materially altered....

(b) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee ... that

(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(2) *all signatures are genuine or authorized;* and

(3) the item has not been materially altered; and

(4) no defense of any party is good against him....

Tex.Bus. & Com.Code Ann. § 4.207 (Vernon 1968) (emphasis added).

**6.** The collecting bank asserted other defensive theories, but we need not address all of them.

**7.** The collecting bank plead for attorney's fees under various provisions of the Texas Uniform Commercial Code, the Deceptive Trade Practices Act, and the Texas Civil Practice and Remedies Code for breach of contract.

ing, and we disregard all contrary evidence and inferences. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

As part of the summary judgment proof, the collecting bank attached an affidavit of Robert J. Kramer to the motion. Kramer is the president of the collecting bank, and stated that the collecting bank "has had to pay attorney's expenses in excess of $12,-000 to defend it in this lawsuit."

The collecting bank also attached an affidavit of Jay H. Dushkin, who was hired to represent the collecting bank in this lawsuit. Dushkin stated:

> I am familiar with the normal reasonable fees charged in Harris County, Texas ... it is my professional opinion that at the time this Court hears Plaintiff's Motion for Summary Judgment, a fair, reasonable and just attorneys' fee to be charged against the Defendant ... is Fifteen Thousand and No/100 Dollars ($15,000.00).

The collecting bank's proof of attorney's fees was uncontroverted, and therefore sufficient as a matter of law. *See Clark v. South Loop Nat'l Bank*, 740 S.W.2d 471, 472 (Tex.App.—Houston [1st Dist.] 1987, no writ); TEX.R.CIV.P. 166a.[8]

We overrule the third point of error.

## IV. Untimely response

In his fourth point of error, White urges the trial court abused its discretion in refusing to consider his response to the collecting bank's motion for summary judgment.

The collecting bank filed its motion on May 25, 1989. The trial court scheduled a hearing for June 16, 1989. On the day of the hearing, White submitted a motion for leave to file a response and affidavits. White also requested the trial court continue the hearing on another date. The trial court refused the motion, and proceeded to hear the summary judgment evidence. White now claims the trial court abused its discretion.

 The granting or denial of such motions is within the sound discretion of the trial court. *Yates v. Equitable Gen. Ins. Co. of Texas*, 672 S.W.2d 822, 827 (Tex.App.—Houston [1st Dist.]), *aff'd*, 684 S.W.2d 669 (Tex.1984). The trial court's ruling will not be disturbed unless the record shows a clear abuse of discretion. *Id.*

Rule 166a of the Texas Rules of Civil Procedure states:

> Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

TEX.R.CIV.P. 166a. This rule is merely directory, and the trial court may refuse or accept any affidavits that are filed late. *Axcell v. Phillips*, 473 S.W.2d 554, 560 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

White cites *Axcell* and *Majestic Bldg. Corp. v. McClelland*, 559 S.W.2d 883, 884 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ), because this Court held, in both cases, that the trial court would not necessarily abuse its discretion if it considered responses and affidavits that are filed late. In *Majestic*, the trial court did consider a response filed on the day of the hearing. 559 S.W.2d at 884. We decided the trial court did not abuse its discretion in *Majestic*. In *Yates*, however, the trial court refused an untimely response, and we still held there was no abuse of discretion. 672

---

**8.** The rule says that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

S.W.2d at 827. These cases illustrate the flexibility of the "abuse of discretion" standard.

In this case, White had at least two weeks to prepare a response and collect testimony for affidavits. If he knew he could not do so, he should have requested a continuance before the day of the hearing. In *Yates*, this Court stated it is incumbent upon all movants and respondents to devote particular attention to the time limits applicable to summary judgment practice. 672 S.W.2d at 827. The record in this case does not show a clear abuse of discretion.

We overrule the fourth point of error.