EMMETT PROPERTIES, INC., Trend, L.P., La Git 88 Trust, Individually and through its Trustee Tom McKinney, and John Powers, Appellants,

v.

HALLIBURTON ENERGY SERVICES, INC., Dresser Industries, Inc., Varco Systems, Inc., Varco International, Inc., Baroid Drilling Fluids, Inc., Baroid Corporation, Varco/Shaffer, Inc., and N L Industries, Inc., Appellees.

No. 14–04–00281–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 3, 2005.

Rehearing Overruled July 14, 2005.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellants appeal the trial court's dismissal of their claims against the appellees.[1] We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants Emmett Properties, Inc. and Trend, L.P. each own real property located northwest of property owned by appellee Halliburton Energy Services, Inc., and its predecessors, appellees Dresser Industries, Inc., Varco Systems, Inc., Varco International, Inc., Baroid Drilling Fluids, Inc., Baroid Corporation, Varco/Shaffer, Inc., and N L Industries, Inc. Emmett's property is adjacent to Trend's property, and both Emmett and Trend allege hydrocarbons and hazardous chemicals discharged into the ground and the groundwater system on the Halliburton property migrated to their properties, resulting in pollution and contamination of their respective properties. On June 13, 2002, Emmett and Trend filed suit against the appellees asserting claims of negligence, negligence per se, gross negligence, trespass, nuisance, strict liability, and fraud/fraudulent concealment stemming from the appellees' alleged pollution and contamination of Emmett's and Trend's real properties.

On August 22, 2003, more than a year after Emmett and Trend filed suit, appellees filed a "Motion to Dismiss/Motion for Partial Summary Judgment" seeking dismissal of Emmett's claims on the grounds

James Elmore Hudson and Kenneth A. Keeling, Houston, for appellants.

Daniel V. Flatten, Houston, for appellants.

1. Based on the record presented to this court, Halliburton Affiliates L.L.C. as successor to Baroid Equipment, Inc. f/k/a Shaffer Tool Works, Inc. f/k/a Shaffer, Inc. f/k/a the Rucker Company ("Halliburton Affiliates") did not file an answer to the appellants' suit, and we must conclude Halliburton Affiliates is neither a beneficiary of or party to the final judgment below or the judgment of this court.

that Emmett is an involuntarily dissolved corporate entity without the ability to file suit or prosecute its claims and Emmett's claims were filed outside the three-year window provided by article 7.12, section C of the Texas Business Corporation Act. A hearing on the motion was held September 30, 2003, and, on October 3, 2003, the trial court granted the appellees' motion and dismissed Emmett's claims.

Emmett filed a motion for new trial and a motion to reconsider arguing the October 3, 2003 judgment should be set aside because the Secretary of State reinstated Emmett to active status on September 30, 2003, and Emmett's reinstatement revived its corporate privileges. Emmett claims it did not learn of its reinstatement until after the hearing on the summary judgment. Emmett's reinstatement to active status is evidenced by a certificate issued by the Secretary of State, dated September 30, 2003. The trial court denied both of Emmett's motions.

On November 12, 2003, John Powers and La Git 88 Trust,[2] shareholders of Emmett, filed a petition in intervention as owners of the Emmett real properties. In response, the appellees filed a joint motion to dismiss, a motion for summary judgment, and special exceptions to the petition in intervention, seeking dismissal of Powers' and La Git's claims on several grounds. In addition, the appellees filed a joint no-evidence motion for summary judgment against Trend, asserting there is no evidence that Trend's property had suffered any groundwater contamination or that any such contamination was caused by the appellees. The appellees also subsequently filed a motion to strike the expert report attached to Trend's response to the

appellees' no-evidence summary judgment motion.

On March 1, 2004, the trial court granted the appellees' motions and dismissed Trend's, Powers', and La Git's claims.

On appeal, appellants raise six issues, arguing the trial court erred by: (1) granting the appellees' Motion to Dismiss/Motion for Partial Summary Judgment against Emmett; (2) not granting Emmett a new trial; (3) not granting Emmett's motion to reconsider; (4) granting the appellees' motion to dismiss, motion for summary judgment, and special exceptions to Power's and La Git's petition in intervention; (5) striking Trend's expert report; and (6) granting the appellees' no-evidence summary judgment against Trend.

### DISCUSSION

## I. Dismissal of Emmett's and the Intervenors' Claims

### A. Emmett's Claims

#### 1. Standard of Review

The movant for summary judgment has the burden to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against him. *Levesque v. Wilkens*, 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). We review the summary judgment evidence using familiar standards of review. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 916–17 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

---

**2.** References to "La Git" in this opinion are to La Git 88 Trust, individually and through its trustee Tom McKinney.

## 2. Discussion

On appeal, Emmett contends the trial court erred in granting appellees' motion because summary judgment was not the proper vehicle for appellees to obtain dismissal of Emmett's claims. Emmett argues the appellees' motion should have been brought as a verified motion to abate because the motion is directed at Emmett's capacity to prosecute its claims. Emmett further asserts the defect of forfeiture of its corporate charter was curable at any time, and fact questions precluded summary judgment in favor of appellees.

 Appellees counter the trial court's dismissal of Emmett's claims was proper because Emmett's claims against appellees were extinguished by statute. Their motion states,

> While corporations have an ability to cure [a revocation or forfeiture of a corporate charter and privileges for violation of the franchise tax statute] and conduct limited acts, this right is limited to a three year window from the date of dissolution. TEX. BUS. CORP. ACT ANN. art. 7.12, § C (Vernon 2003); *Durham Clinic, P.A. v. Barrett,* 107 S.W.3d [761] at 764; *Dorney v. Henderson Clay Prods., Inc.,* 838 S.W.2d 314 (Tex.App.-Texarkana 1992, writ denied).
>
> It is undisputed that Emmett has been dissolved. It is undisputed that Emmett did not cure its corporate status within three years of dissolution. This Court should dismiss Emmett's claims as Emmett is not a corporate entity, it was dissolved three years prior to filing suit, it is still dissolved and has no right to file suit in the State of Texas. [ (References to exhibits omitted).]

The appellees cite article 7.12, section C of the Texas Business Corporation Act in their motion, along with two Texas cases in which courts enforced the part of this statute that extinguishes existing claims by or against a "dissolved corporation" unless an action or proceeding on the claims is brought within three years of dissolution. *See* TEX. BUS. CORP. ACT ANN. art. 7.12, § C (Vernon 2003); *Durham Clinic, P.A. v. Barrett,* 107 S.W.3d 761, 762–63 (Tex.App.-Waco 2003, pet. denied) (holding claim against dissolved corporation was barred under article 7.12, section C because it was brought more than three years after the date of dissolution); *Dorney v. Henderson Clay Prods., Inc.,* 838 S.W.2d 314, 316 (Tex.App.-Texarkana 1992, writ denied) (holding same). The evidence attached to appellees' motion shows the Secretary of State forfeited Emmett's corporate charter on February 12, 1999, pursuant to section 171.309 of the Texas Tax Code.[3] Appellees argue Emmett's failure to cure its corporate status within three years of its forfeiture by the Secretary of State extinguished Emmett's claims against them.

Under article 7.12, the definition of a "dissolved corporation" includes a corporation whose charter has been forfeited under the Texas Tax Code, unless the forfeiture has been set aside. *See* TEX. BUS. CORP. ACT ANN. art. 7.12, § F(1)(e). The summary judgment evidence showed that, for the purposes of article 7.12, Emmett was a "dissolved corporation" with a dissolution date of February 12, 1999. As such, Emmett was required to bring suit on its claims within three years of this date, which was February 12, 2002. Emmett, however, did not file suit until June 13,

---

**3.** Section 171.309 permits the Secretary of State to forfeit the charter or certificate of authority of a corporation if the Secretary (1) receives the comptroller's certification, (2) the corporation does not revive its forfeited corporate privileges within 120 days after forfeiture of its privileges, and (3) the corporation does not have assets from which a judgment for any taxes may be satisfied. *See* TEX. TAX CODE ANN. § 171.309 (Vernon 2002).

2002, *more than three years after the dissolution date.* Therefore, Emmett's claims were extinguished under article 7.12, section C, and the trial court properly granted the appellees' motion for summary judgment.

■■■ Emmett counters that on September 30, 2003, its corporate charter and privileges were restored after payment of its delinquent franchise taxes and its reinstatement revives the extinguished claims. We disagree. Emmett's subsequent reinstatement to active status does not revive the extinguished claims. The parties have not cited any statutory provision that would reverse the extinguishment of Emmett's claims under article 7.12, section C, and the Texas Tax Code states only a corporation's corporate privileges and charter are restored upon payment of delinquent taxes.[4] TEX. TAX CODE ANN. §§ 171.312, 171.313 (Vernon 2002). The Tax Code does not state a corporation's extinguished claims are revived.

Emmett further asserts the appellees' argument regarding the extinguishment provision of article 7.12, section C conflicts with this court's opinion in *Lighthouse Church of Cloverleaf v. Texas Bank,* 889 S.W.2d 595, 600 (Tex.App.-Houston [14th Dist.] 1994, writ denied). In *Lighthouse Church,* this court correctly noted that a corporation whose charter has been for-

feited under the Texas Tax Code may request the Secretary of State to set aside the forfeiture of its corporate charter under section 171.313 of the Texas Tax Code at any time by paying the delinquent taxes. 889 S.W.2d at 600; *see* TEX. TAX CODE ANN. § 171.313. This court, however, did not address article 7.12, section C in the opinion. Affirming the trial court's judgment based on article 7.12, section C presents no conflict with *Lighthouse Church.*

The trial court's grant of summary judgment in appellees' favor was proper because Emmett's claims against appellees ceased to exist after the three-year window closed. We overrule issue one.

In issues two and three, appellants assert the trial court erred in not granting (1) Emmett's motion for new trial in light of newly discovered evidence consisting of the September 30, 2003 certificate of reinstatement; and (2) Emmett's motion to reconsider in light of additional statutory law. Emmett's reinstatement four and a half years after its forfeiture does not revive the extinguished claims. Emmett's claims against appellees ceased to exist after the three-year window closed. Accordingly, we overrule issues two and three.

### B. The Intervenors' Claims

In issue four, appellants seek reversal of the trial court's March 1, 2004 order dis-

---

4. Emmett argues article 7.01, section E applies to this case so as to reverse any effects of the dissolution other than the personal liability of Emmett's directors, officers, and agents, which is not an issue in this case. However, under the unambiguous language of the statute, article 7.01, section E applies only to corporations that have been *dissolved* by the Secretary of State under article 7.01, section B and that successfully have applied for reinstatement under article 7.01, section E. *See* TEX. BUS. CORP. ACT. ANN. art. 7.01, §§ B, E (Vernon 2003). Emmett was not *dissolved* by the Secretary of State under article 7.01, section B; rather, the Secretary of State forfeited

Emmett's charter under section 171.309 of the Texas Tax Code. *Compare* TEX. BUS. CORP. ACT ANN. art. 7.01, § B, *with* TEX. TAX CODE ANN. § 171.309. Regardless of the scope of article 7.01, section E's amnesty provision, under its unambiguous language, it does not apply to Emmett. *See* TEX. BUS. CORP. ACT ANN. art. 7.01, § E. Emmett is treated as a "dissolved corporation" only under article 7.12. *See* TEX. BUS. CORP. ACT ANN. art. 7.12, § F(1)(e) (stating "[i]n this *Article* ... [t]he term 'dissolved corporation' means a corporation ... whose charter was forfeited pursuant to the Tax Code, unless the forfeiture has been set aside") (emphasis added).

missing intervenors John Powers and La Git's claims. The intervenors seek to avoid the consequences of article 7.12, section C of the Texas Business Corporation Act by asserting Emmett's claims in their individual capacities.

Appellees argued in the trial court below, *inter alia*, the intervenors may not sue in their own name for their own benefit on a cause of action belonging to the corporation and sought dismissal of the intervenors' claims on the ground that "the intervenors do not have standing to file individually."

### 1. Standard of Review

 Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). The standard of review applicable to subject matter jurisdiction also applies to standing. *Id.* at 446. Under this standard, the pleader must allege facts affirmatively demonstrating the court's jurisdiction to hear the case. On appellate review, we construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Id.* A party's standing to pursue a cause of action is a question of law. *Coons–Andersen v. Andersen*, 104 S.W.3d 630, 634 (Tex.App.-Dallas 2003, no pet.). We review the trial court's actions de novo. *Id.*

### 2. Discussion

 A cause of action for damages to the property of a corporation is vested in the corporation. *White v. Independence Bank, N.A.*, 794 S.W.2d 895, 897 (Tex. App.-Houston [1st Dist.] 1990, writ denied); *see also Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex.App.-Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717, 719 (Tex.1990). A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. *White*, 794 S.W.2d at 898. An action for damages to corporate property must be brought by the corporation for obvious reasons: to avoid multiplicity of suits and so that any recovery will be available to pay the corporation's debts. Even though stockholders may sustain indirect losses, *they have no independent right* to bring an action for injuries suffered by the corporation.[5] For corporate injuries, a stockholder is required to file suit on behalf of the corporation. *Id.*

 In their petition in intervention, the intervenors, shareholders of Emmett, individually sought to intervene and bring suit in their own name for damages belonging to Emmett, a Texas corporation.[6] As explained above, the intervenors do not have an independent right to bring an action for injuries suffered by Emmett. Moreover, even if the intervenors had standing, their claims, being derivative of Emmett's, were extinguished. Accordingly, the trial court properly dismissed the

**5.** Article 5.14 of the Texas Business Corporation Act allows a shareholder to bring a derivative suit. TEX. BUS. CORP. ACT ANN. art. 5.14 (Vernon 2003). The intervenors did not file a shareholder's derivative suit.

**6.** The intervenors' petition commences with the following description of the parties:

> Intervenor John Powers is a shareholder of Emmett Properties, Inc. If Emmett Properties, Inc. did not have capacity to file suit in

> this action in its own name, then shareholder John Powers was one of two true parties in interest and should be substituted in place of Plaintiff Emmett Properties to the extent of his ownership.

The petition describes intervenor La Git in the same manner. The intervenors do not sue on behalf of the corporation, and at the time the intervenors petitioned to intervene, Emmett had been reinstated.

intervenors' claims, and we overrule issue four.

## III. Messenger's Expert Report and the No–Evidence Summary Judgment Against Trend

In issues five and six, Trend contends the trial court erred in striking Allen Messenger's expert report and granting appellees' no-evidence motion for summary judgment. Appellees' no-evidence motion alleged there was no evidence Trend's property had suffered groundwater contamination or that any groundwater contamination sustained was caused by appellees. Trend attached Messenger's expert report to its response to the appellees' no-evidence motion for summary judgment.

Trend asserts the trial court abused its discretion in striking Messenger's expert report because it is admissible, reliable, and competent, and contains more than a scintilla of probative evidence precluding summary judgment in favor of appellees. Trend also complains of the appellees' failure to obtain or request a notice of hearing on the motion to strike. Appellees respond that Messenger's expert report was properly struck because it does not meet the reliability requirements for scientific evidence, shows no special knowledge or analysis of the matter under consideration, does not address alternative causes, is unsworn, and is inadmissible hearsay.

### A. Standard of Review

A defendant may file a no-evidence motion for summary judgment, after sufficient time for discovery has passed, if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). In reviewing a "no evidence" summary judgment, we review the evidence in the light most favorable to the non-movant and disregard all evidence and inferences to the contrary. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

### B. Discussion

As an initial matter, we address Trend's complaints that "no notice of hearing was obtained or requested" on the appellees' motion to strike Trend's expert report "as required by Tex.R. Civ. P. 21a" and that the trial court erred by ruling on the motion without the motion having been noticed for submission or a hearing.[7] The record shows the following with regard to the motion to strike: appellants filed the motion to strike on February 13, 2004; Trend filed a response to the motion to strike on February 16, 2004, in which it objected to appellants not setting the motion to strike for a hearing; Trend filed a supplemental response to the motion to strike on February 17, 2004; Trend filed a second supplemental response on February 25, 2004; and the trial court granted the motion to strike on March 1, 2004. Trend contends it renewed its objection to the lack of notice of a hearing on the motion to strike at the summary judgment hearing. However, a transcription of the

---

7. The two cases Trend cites in support of its contention that the filing of a motion to strike an expert report does not constitute submission of the motion are distinguishable and do not support Trend's argument. *See Taliaferro v. Smith*, 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ) (holding in the context of a summary judgment proceeding that a plaintiff may take a nonsuit at any time prior to the time the court renders judgment); *Mainland Sav. Ass'n v. Wilson*, 545 S.W.2d 491, 493 (Tex.App.-Houston [1st Dist.] 1976, no writ) (holding partial summary judgment in favor of defendant improper when plaintiff's non-suit was timely filed prior to submission of summary judgment motion).

summary judgment hearing is not part of the appellate record.

The record does not show Trend secured any ruling on its objection to the lack of notice of a hearing on the motion to strike. Therefore, Trend has waived any complaint on appeal. Tex.R.App. P. 33.1(a)(2). Furthermore, Trend does not argue on appeal that the error probably caused the rendition of an improper judgment or probably prevented it from properly presenting its case to the court of appeals. *See* Tex.R.App. P. 44.1(a). We overrule this part of issue five.

 To defeat the appellees' no-evidence motion, Trend was required to show that halogenated hydrocarbons from the Halliburton property migrated onto Trend's property and caused injury. Causation cannot be established by mere speculation or conjecture, but must be established by evidence of probative value. *See Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex.1996); *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). Therefore, to overcome the no-evidence motion, Trend was required to present more than a scintilla of evidence that contamination of its property was caused by the appellees.

 Admissibility of expert testimony is governed by the Texas Rules of Evidence and the *Robinson* factors. *See* Tex.R. Evid. 702, 705(c); *E.I du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556–57 (Tex.1995). An expert's testimony must be both relevant to the issues and based on a reliable foundation. *Robinson,* 923 S.W.2d at 556. An expert's failure to rule out other causes of the damage renders his opinion little more than speculation and therefore, unreliable. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 720 (Tex.1997) ("[I]f there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty."); *Robinson,* 923 S.W.2d at 559 ("An expert who is trying to find a cause of something should carefully consider alternative causes."); *Hess v. McLean Feedyard, Inc.,* 59 S.W.3d 679, 687 (Tex.App.-Amarillo 2000, pet. denied) ("[A]n expert should carefully consider and rule out alternative causes, and the failure to rule out other causes results in speculation and conjecture and amounts to no evidence of causation."); *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 934 (Tex.App.-Texarkana 1997, pet. denied) (analyzing expert testimony under *Robinson* factors and concluding testimony unreliable when experts failed to exclude other potential causes).

In *Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 446 (Tex.App.-Fort Worth 1997, pet. denied), the Fort Worth Court of Appeals held an expert's testimony constituted no evidence when the expert failed to testify that gas from the defendant's oil wells was found in the plaintiff's water or that either the defendant's oil wells or plaintiff's water supply contained hydrogen sulfide. The court also held a second expert's testimony was no evidence because the expert failed to rule out other causes:

> An expert who is trying to find the cause of something should carefully consider and rule out alternative causes. [The expert's] failure to rule out other causes of the presence of hydrogen sulfide in appellees' water renders his opinion "little more than speculation." Mere guess or conjecture is not probative evidence.

*Id.* at 448 (citations omitted). Similarly, in *Martinez v. City of San Antonio,* 40 S.W.3d 587, 595 (Tex.App.-San Antonio 2001, pet. denied), the San Antonio Court of Appeals held the plaintiffs' expert testimony constituted no evidence the defendant caused the plaintiffs' injuries because

the expert failed to rule out alternative sources of lead contamination in arriving at his lead calculation. *See also Weiss v. Mechanical Associated Servs., Inc.*, 989 S.W.2d 120, 125–26 (Tex.App.-San Antonio 1999, pet. denied) (holding expert testimony properly struck when experts were unable to rule out other potential causes of the plaintiff's illness with reasonable certainty).

Trend contends the foundational data underlying Messenger's opinion is reliable because it is "based on interpolation of the data found on two sides of the Trend property which establishes the presence of halogenated hydrocarbons consistent with contaminants from the Halliburton property." Based on this "interpolation," Messenger opines in his report that "there is a reasonable probability that one or more of the halogenated hydrocarbons contaminate the shallow groundwater beneath the Trend L.P. property at concentrations that require remediation under the application TCEQ Texas Risk Reduction Regulations PCL for usable groundwater."

In his report, Messenger does not consider alternative causes for the contamination. Furthermore, he simply concludes the shallow groundwater beneath Trend's property is contaminated with halogenated hydrocarbons based on the fact that Haliburton consultants have found halogenated hydrocarbons that are the same halogenated hydrocarbons as those found under the Halliburton property under each property that is between Trend and the Halliburton property.

Conspicuous by its absence from the record is any testimony by Messenger that halogenated hydrocarbons had been found beneath the Trend property. Moreover, in arriving at his conclusion that there is a "reasonable probability" that halogenated hydrocarbons are beneath the Trend property, Messenger fails to rule out alterna-

tive sources for the assumed contamination, such as other surrounding properties. Messenger's opinion constitutes no more than mere possibility, speculation, and surmise.

After considering the evidence presented to the trial court, we conclude the trial court did not abuse its discretion in striking Messenger's report. Having failed to respond with any evidence raising a genuine fact issue on the element of causation, the no-evidence summary judgment in favor of appellees was proper, and we affirm the no-evidence summary judgment against Trend. Accordingly, we overrule issues five and six.

### Conclusion

We affirm the judgment of the trial court.