Affirmed and Opinion filed March 3, 2005









Affirmed
and Opinion filed March 3, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00281-CV

____________

 

EMMETT PROPERTIES, INC., TREND,
L.P., LA GIT 88 TRUST, INDIVIDUALLY AND THROUGH ITS TRUSTEE TOM MCKINNEY,

AND JOHN POWERS, Appellants

 

V.

 

HALLIBURTON ENERGY SERVICES, INC.,
DRESSER INDUSTRIES, INC., VARCO SYSTEMS, INC., VARCO INTERNATIONAL, INC., 

BAROID DRILLING FLUIDS, INC.,
BAROID CORPORATION, VARCO/SHAFFER, INC., AND N L INDUSTRIES, INC., Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 02-30120

 



 

O P I N I O N

Appellants appeal the trial court=s dismissal of
their claims against the appellees.[1]  We affirm.








Factual and Procedural Background

Appellants Emmett Properties, Inc. and Trend, L.P. each own
real property located northwest of property owned by appellee Halliburton
Energy Services, Inc., and its predecessors, appellees Dresser Industries,
Inc., Varco Systems, Inc., Varco International, Inc., Baroid Drilling Fluids,
Inc., Baroid Corporation, Varco/Shaffer, Inc., and N L Industries, Inc.  Emmett=s property is
adjacent to Trend=s property, and both Emmett and Trend
allege hydrocarbons and hazardous chemicals discharged into the ground and the
groundwater system on the Halliburton property migrated to their properties,
resulting in pollution and contamination of their respective properties.  On June 13, 2002, Emmett and Trend filed suit
against the appellees asserting claims of negligence, negligence per se, gross
negligence, trespass, nuisance, strict liability, and fraud/fraudulent
concealment stemming from the appellees= alleged pollution
and contamination of Emmett=s and Trend=s real properties.


On August 22, 2003, more than a year after Emmett and Trend
filed suit, appellees filed a AMotion to
Dismiss/Motion for Partial Summary Judgment@ seeking dismissal
of Emmett=s claims on the grounds that Emmett is an
involuntarily dissolved corporate entity without the ability to file suit or
prosecute its claims and Emmett=s claims were
filed outside the three-year window provided by article 7.12, section C of the
Texas Business Corporation Act.  A hearing
on the motion was held September 30, 2003, and, on October 3, 2003, the trial
court granted the appellees= motion and
dismissed Emmett=s claims.








Emmett filed a motion for new trial and a motion to
reconsider arguing the October 3, 2003 judgment should be set aside because the
Secretary of State reinstated Emmett to active status on September 30, 2003,
and Emmett=s reinstatement revived its corporate
privileges.  Emmett claims it did not
learn of its reinstatement until after the hearing on the summary
judgment.  Emmett=s reinstatement to
active status is evidenced by a certificate issued by the Secretary of State,
dated September 30, 2003.  The trial
court denied both of Emmett=s motions.

On November 12, 2003, John Powers and La Git 88 Trust,[2]
shareholders of Emmett, filed a petition in intervention as owners of the
Emmett real properties.  In response, the
appellees filed a joint motion to dismiss, a motion for summary judgment, and
special exceptions to the petition in intervention, seeking dismissal of Powers= and La Git=s claims on
several grounds.  In addition, the
appellees filed a joint no-evidence motion for summary judgment against Trend,
asserting there is no evidence that Trend=s property had
suffered any groundwater contamination or that any such contamination was
caused by the appellees.  The appellees
also subsequently filed a motion to strike the expert report attached to Trend=s response to the
appellees= no-evidence summary judgment motion. 

On March 1, 2004, the trial court granted the appellees= motions and
dismissed Trend=s, Powers=, and La Git=s claims.

On appeal, appellants raise six issues, arguing the trial
court erred by:  (1) granting the
appellees= Motion to Dismiss/Motion for Partial
Summary Judgment against Emmett; (2) not granting Emmett a new trial; (3) not
granting Emmett=s motion to reconsider; (4) granting the
appellees= motion to dismiss, motion for summary
judgment, and special exceptions to Power=s and La Git=s petition in
intervention; (5) striking Trend=s expert report;
and (6) granting the appellees= no-evidence
summary judgment against Trend.

Discussion

I.        Dismissal of Emmett=s and the
Intervenors= Claims

A.      Emmett=s Claims

1.       Standard of Review








The movant for summary judgment has the burden to show
there is no genuine issue of material fact and that he is entitled to judgment
as a matter of law.  Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  A defendant moving for traditional summary
judgment assumes the burden of showing as a matter of law the plaintiff has no
cause of action against him.  Levesque
v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  We review the
summary judgment evidence using familiar standards of review.  See Dolcefino v. Randolph, 19 S.W.3d
906, 916B17 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied). 

2.       Discussion

On appeal, Emmett contends the trial court erred in
granting appellees= motion because summary judgment was not
the proper vehicle for appellees to obtain dismissal of Emmett=s claims.  Emmett argues the appellees= motion should
have been brought as a verified motion to abate because the motion is directed
at Emmett=s capacity to prosecute its claims.  Emmett further asserts the defect of
forfeiture of its corporate charter was curable at any time, and fact questions
precluded summary judgment in favor of appellees.  

Appellees counter the trial court=s dismissal of
Emmett=s claims was
proper because Emmett=s claims against appellees were
extinguished by statute.  Their motion
states,

While corporations have an ability to cure [a revocation or forfeiture
of  a corporate charter and privileges
for violation of the franchise tax statute] and conduct limited acts, this
right is limited to a three year window from the date of dissolution.  Tex.
Bus. Corp. Act Ann. art. 7.12, ' C (Vernon 2003); Durham Clinic, P.A. v. Barrett,
107 S.W.3d at 767; Dorney v. Henderson Clay Prods., Inc., 838 S.W.2d 314
(Tex. App.CTexarkana 1992, writ denied).  

It is undisputed
that Emmett has been dissolved.  It is
undisputed that Emmett did not cure its corporate status within three years of
dissolution.  This Court should dismiss
Emmett=s claims as Emmett
is not a corporate entity, it was dissolved three years prior to filing suit,
it is still dissolved and has no right to file suit in the State of Texas.  [(References to exhibits omitted).] 








The appellees cite article 7.12, section C of the Texas
Business Corporation Act in their motion, along with two Texas cases in which
courts enforced the part of this statute that extinguishes existing claims by
or against a Adissolved corporation@ unless an action
or proceeding on the claims is brought within three years of dissolution.  See Tex.
Bus. Corp. Act Ann. art. 7.12, ' C (Vernon 2003); Durham
Clinic, P.A. v. Barrett, 107 S.W.3d 761, 762B63 (Tex. App.CWaco 2003, pet.
denied) (holding claim against dissolved corporation was barred under article
7.12, section C because it was brought more than three years after the date of
dissolution); Dorney v. Henderson Clay Prods., Inc., 838 S.W.2d 314, 316
(Tex. App.CTexarkana 1992, writ denied) (holding
same).  The evidence attached to
appellees= motion shows the Secretary of State
forfeited Emmett=s corporate charter on February 12, 1999,
pursuant to section 171.309 of the Texas Tax Code.[3]  Appellees argue Emmett=s failure to cure
its corporate status within three years of its forfeiture by the Secretary of
State extinguished Emmett=s claims against them.  

Under article 7.12, the definition of a  Adissolved
corporation@ includes a corporation whose charter has
been forfeited under the Texas Tax Code, unless the forfeiture has been set
aside.  See Tex. Bus. Corp. Act Ann. art. 7.12, ' F(1)(e).  The summary judgment evidence showed that,
for the purposes of article 7.12, Emmett was a Adissolved
corporation@ with a dissolution date of February 12,
1999.  As such, Emmett was required to
bring suit on its claims within three years of this date, which was February 12,
2002.  Emmett, however, did not file suit
until June 13, 2002, more than three years after the dissolution date.  Therefore, Emmett=s claims were
extinguished under article 7.12, section C, and the trial court properly
granted the appellees= motion for summary judgment.








Emmett counters that on September 30, 2003, its corporate
charter and privileges were restored after payment of its delinquent franchise
taxes and its reinstatement revives the extinguished claims.  We disagree. 
Emmett=s subsequent reinstatement to active
status does not revive the extinguished claims. 
The parties have not cited any statutory provision that would reverse
the extinguishment of Emmett=s claims under
article 7.12, section C, and the Texas Tax Code states only a corporation=s corporate
privileges and charter are restored upon payment of delinquent taxes.[4]  Tex.
Tax Code Ann. '' 171.312, 171.313 (Vernon 2002).  The Tax Code does not state a corporation=s extinguished
claims are revived.

Emmett further asserts the appellees= argument
regarding the extinguishment provision of article 7.12, section C conflicts
with this court=s opinion in Lighthouse Church of
Cloverleaf v. Texas Bank, 889 S.W.2d 595, 600 (Tex. App.CHouston [14th
Dist.] 1994, writ denied).  In Lighthouse
Church, this court correctly noted that a corporation whose charter has
been forfeited under the Texas Tax Code may request the Secretary of State to
set aside the forfeiture of its corporate charter under section 171.313 of the
Texas Tax Code at any time by paying the delinquent taxes.  889 S.W.2d at 600; see Tex. Tax Code Ann. ' 171.313.  This court, however, did not address article
7.12, section C in the opinion. 
Affirming the trial court=s judgment based
on article 7.12, section C presents no conflict with Lighthouse Church.








The trial court=s grant of summary
judgment in appellees= favor was proper because Emmett=s claims against
appellees ceased to exist after the three-year window closed.  We overrule issue one.

In issues two and three, appellants assert the trial court
erred in not granting (1) Emmett=s motion for new
trial in light of newly discovered evidence consisting of the September 30,
2003 certificate of reinstatement; and (2) Emmett=s motion to
reconsider in light of additional statutory law.  Emmett=s reinstatement
four and a half years after its forfeiture does not revive the extinguished
claims.  Emmett=s claims against
appellees ceased to exist after the three-year window closed.  Accordingly, we overrule issues two and
three. 

B.      The Intervenors= Claims

In issue four, appellants seek reversal of the trial court=s March 1, 2004
order dismissing intervenors John Powers and La Git=s claims.  The intervenors seek to avoid the
consequences of article 7.12, section C of the Texas Business Corporation Act
by asserting Emmett=s claims in their individual
capacities.  

Appellees argued in the trial court below, inter alia,
the intervenors may not sue in their own name for their own benefit on a cause
of action belonging to the corporation and sought dismissal of the intervenors= claims on the
ground that Athe intervenors do not have standing to
file individually.@

1.       Standard of Review








Standing is a component of subject matter jurisdiction and
is a constitutional prerequisite to maintaining a lawsuit under Texas law.  Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 443B44 (Tex.
1993).  The standard of review applicable
to subject matter jurisdiction also applies to standing.  Id. at 446.  Under this standard, the pleader must allege
facts affirmatively demonstrating the court=s jurisdiction to
hear the case.  On appellate review, we
construe the pleadings in favor of the plaintiff and look to the pleader=s intent.  Id. 
A party=s standing to pursue a cause of action is
a question of law.  Coons-Andersen v.
Andersen, 104 S.W.3d 630, 634 (Tex. App.CDallas 2003, no
pet.).  We review the trial court=s actions de
novo.  Id.  

2.       Discussion 

A cause of action for damages to the property of a
corporation is vested in the corporation. 
White v. Independence Bank, N.A., 794 S.W.2d 895, 897 (Tex. App.CHouston [1st
Dist.] 1990, writ denied); see also Hajdik v. Wingate, 753 S.W.2d
199, 201 (Tex. App.CHouston [1st Dist.] 1988), aff=d, 795 S.W.2d 717,
719 (Tex. 1990).  A corporate stockholder
cannot recover damages personally for a wrong done solely to the corporation,
even though he may be injured by that wrong. 
White, 794 S.W.2d at 898. 
An action for damages to corporate property must be brought by the
corporation for obvious reasons:  to
avoid multiplicity of suits and so that any recovery will be available to pay
the corporation=s debts. 
Even though stockholders may sustain indirect losses, they have no
independent right to bring an action for injuries suffered by the
corporation.[5]  For corporate injuries, a stockholder is
required to file suit on behalf of the corporation.  Id.








In their petition in intervention, the intervenors,
shareholders of Emmett, individually sought to intervene and bring suit in
their own name for damages belonging to Emmett, a Texas corporation.[6]  As explained above, the intervenors do not
have an independent right to bring an action for injuries suffered by
Emmett.  Moreover, even if the
intervenors had standing, their claims, being derivative of Emmett=s, were
extinguished.  Accordingly, the trial
court properly dismissed the intervenors= claims, and we
overrule issue four. 

III.      Messenger=s Expert Report
and the No-Evidence Summary Judgment Against Trend

In issues five and six, Trend contends the trial court
erred in striking Allen Messenger=s expert report
and granting appellees= no-evidence motion for summary
judgment.  Appellees= no-evidence
motion alleged there was no evidence Trend=s property had
suffered groundwater contamination or that any groundwater contamination
sustained was caused by appellees.  Trend
attached Messenger=s expert report to its response to the
appellees= no-evidence motion for summary judgment. 

Trend asserts the trial court abused its discretion in
striking Messenger=s expert report because it is admissible,
reliable, and competent, and contains more than a scintilla of probative
evidence precluding summary judgment in favor of appellees.  Trend also complains of the appellees= failure to obtain
or request a notice of hearing on the motion to strike.  Appellees respond that Messenger=s expert report
was properly struck because it does not meet the reliability requirements for
scientific evidence, shows no special knowledge or analysis of the matter under
consideration, does not address alternative causes, is unsworn, and is
inadmissible hearsay. 

A.      Standard of Review








A defendant may file a no-evidence motion for summary
judgment, after sufficient time for discovery has passed, if there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i).  In reviewing
a Ano evidence@ summary judgment,
we review the evidence in the light most favorable to the non‑movant and
disregard all evidence and inferences to the contrary.  Coastal Conduit & Ditching, Inc. v.
Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th
Dist.] 2000, no pet.). 

B.      Discussion

As an initial matter, we address Trend=s complaints that Ano notice of
hearing was obtained or requested@ on the appellees= motion to strike
Trend=s expert report Aas required by Tex. R. Civ. P. 21a@ and that the
trial court erred by ruling on the motion without the motion having been
noticed for submission or a hearing.[7]  The record shows the following with regard to
the motion to strike: appellants filed the motion to strike on February 13,
2004; Trend filed a response to the motion to strike on February 16, 2004, in
which it objected to appellants not setting the motion to strike for a hearing;
Trend filed a supplemental response to the motion to strike on February 17,
2004; Trend filed a second supplemental response on February 25, 2004; and the
trial court granted the motion to strike on March 1, 2004.  Trend contends it renewed its objection to
the lack of notice of a hearing on the motion to strike at the summary judgment
hearing.  However, a transcription of the
summary judgment hearing is not part of the appellate record.  

The record does not show Trend secured any ruling on its
objection to the  lack of notice of a
hearing on the motion to strike. 
Therefore, Trend has waived any complaint on appeal.  Tex.
R. App. P. 33.1(a)(2). 
Furthermore, Trend does not argue on appeal that the error probably
caused the rendition of an improper judgment or probably prevented it from
properly presenting its case to the court of appeals.  See Tex.
R. App. P. 44.1(a).  We overrule
this part of issue five.








To defeat the appellees= no-evidence
motion, Trend was required to show that halogenated hydrocarbons from the
Halliburton property migrated onto Trend=s property and
caused injury.  Causation cannot be
established by mere speculation or conjecture, but must be established by
evidence of probative value.  See
Leitch v. Hornsby, 935 S.W.2d 114, 119 (Tex. 1996); Union Pump Co. v.
Allbritton, 898 S.W.2d 773, 775 (Tex. 1995).  Therefore, to overcome the no-evidence
motion, Trend was required to present more than a scintilla of evidence that
contamination of its property was caused by the appellees.  

Admissibility of expert testimony is governed  by the Texas Rules of Evidence and the Robinson
factors.  See Tex. R. Evid. 702, 705(c); E.I du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556B57 (Tex.
1995).  An expert=s testimony must
be both relevant to the issues and based on a reliable foundation.  Robinson, 923 S.W.2d at 556.  An expert=s failure to rule
out other causes of the damage renders his opinion little more than speculation
and therefore, unreliable.  See
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 720 (Tex. 1997) (A[I]f there are
other plausible causes of the injury or condition that could be negated, the
plaintiff must offer evidence excluding those causes with reasonable certainty.@); Robinson,
923 S.W.2d at 559 (AAn expert who is trying to find a cause of
something should carefully consider alternative causes.@); Hess v.
McLean Feedyard, Inc., 59 S.W.3d 679, 687 (Tex. App.CAmarillo 2000,
pet. denied) (A[A]n expert should carefully consider and
rule out alternative causes, and the failure to rule out other causes results
in speculation and conjecture and amounts to no evidence of causation.@); Purina
Mills, Inc. v. Odell, 948 S.W.2d 927, 934 (Tex. App.CTexarkana 1997,
pet. denied) (analyzing expert testimony under Robinson factors and
concluding testimony unreliable when experts failed to exclude other potential
causes).  








In Mitchell Energy Corp. v. Bartlett, 958 S.W.2d
430, 446 (Tex. App.CFort Worth 1997, pet. denied), the Fort
Worth Court of Appeals held an expert=s testimony constituted
no evidence when the expert failed to testify that gas from the defendant=s oil wells was
found in the plaintiff=s water or that either the defendant=s oil wells or
plaintiff=s water supply contained hydrogen
sulfide.  The court also held a second
expert=s testimony was no
evidence because the expert failed to rule out other causes:

An expert who is trying to find the
cause of something should carefully consider and rule out alternative
causes.  [The expert=s] failure to rule
out other causes of the presence of hydrogen sulfide in appellees= water renders his
opinion Alittle more than
speculation.@ 
Mere guess or conjecture is not probative evidence. 

Id. at 448 (citations
omitted).  Similarly, in Martinez v.
City of San Antonio, 40 S.W.3d 587, 595 (Tex. App.CSan Antonio 2001,
pet. denied), the San Antonio Court of Appeals held the plaintiffs= expert testimony
constituted no evidence the defendant caused the plaintiffs= injuries because
the expert failed to rule out alternative sources of lead contamination in
arriving at his lead calculation.  See
also Weiss v. Mechanical Associated Servs., Inc., 989 S.W.2d 120, 125B26 (Tex. App.CSan Antonio 1999,
pet. denied) (holding expert testimony properly struck when experts were unable
to rule out other potential causes of the plaintiff=s illness with
reasonable certainty).

Trend contends the foundational data underlying Messenger=s opinion is
reliable because it is Abased on interpolation of the data found
on two sides of the Trend property which establishes the presence of
halogenated hydrocarbons consistent with contaminants from the Halliburton
property.@ 
Based on this Ainterpolation,@ Messenger opines
in his report that Athere is a reasonable probability that one
or more of the halogenated hydrocarbons contaminate the shallow groundwater
beneath the Trend L.P. property at concentrations that require remediation
under the application TCEQ Texas Risk Reduction Regulations PCL for usable
groundwater.@  








In his report, Messenger does not consider alternative
causes for the contamination. 
Furthermore, he simply concludes the shallow groundwater beneath Trend=s property is
contaminated with halogenated hydrocarbons based on the fact that Haliburton
consultants have found halogenated hydrocarbons that are the same halogenated
hydrocarbons as those found under the Halliburton property under each property
that is between Trend and the Halliburton property.  

Conspicuous by its absence from the record is any testimony
by Messenger that halogenated hydrocarbons had been found beneath the Trend
property.  Moreover, in arriving at his
conclusion that there is a Areasonable
probability@ that halogenated hydrocarbons are beneath
the Trend property, Messenger fails to rule out alternative sources for the
assumed contamination, such as other surrounding properties.  Messenger=s opinion
constitutes no more than mere possibility, speculation, and surmise.

After considering the evidence presented to the trial
court, we conclude the trial court did not abuse its discretion in striking
Messenger=s report. 
Having failed to respond with any evidence raising a genuine fact issue
on the element of causation, the no-evidence summary judgment in favor of
appellees was proper, and we affirm the no-evidence summary judgment against
Trend.  Accordingly, we overrule issues
five and six.

Conclusion

We affirm the judgment of the trial court. 

 

 

 

/s/      John
S. Anderson

Justice

 

Judgment rendered
and Opinion filed March 3, 2005.

 

Panel consists of
Justices Anderson, Hudson, and Frost.

 











[1]  Based on the
record presented to this court, Halliburton Affiliates L.L.C. as successor to
Baroid Equipment, Inc. f/k/a Shaffer Tool Works, Inc. f/k/a Shaffer, Inc. f/k/a
the Rucker Company (AHalliburton Affiliates@) did
not file an answer to the appellants= suit,
and we must conclude Halliburton Affiliates is neither a beneficiary of or
party to the final judgment below or the judgment of this court.





[2]  References to ALa Git@ in this opinion are to La Git 88 Trust, individually
and through its trustee Tom McKinney.





[3]  Section
171.309 permits the Secretary of State to forfeit the charter or certificate of
authority of a corporation if the Secretary (1) receives the comptroller=s certification, (2) the corporation does not revive
its forfeited corporate privileges within 120 days after forfeiture of its
privileges, and (3) the corporation does not have assets from which a judgment
for any taxes may be satisfied.  See
Tex. Tax Code Ann. ' 171.309 (Vernon 2002).  





[4]  Emmett argues
article 7.01, section E applies to this case so as to reverse any effects of
the dissolution other than the personal liability of Emmett=s directors, officers, and agents, which is not an
issue in this case.  However, under the
unambiguous language of the statute, article 7.01, section E applies only to
corporations that have been dissolved by the Secretary of State under
article 7.01, section B and that successfully have applied for reinstatement
under article 7.01, section E.  See
Tex. Bus. Corp. Act. Ann. art.
7.01, '' B, E (Vernon 2003). 
Emmett was not dissolved by the Secretary of State under article
7.01, section B; rather, the Secretary of State forfeited Emmett=s charter under section 171.309 of the Texas Tax
Code.  Compare Tex. Bus. Corp. Act Ann. art. 7.01, ' B, with Tex.
Tax Code Ann. ' 171.309. 
Regardless of the scope of article 7.01, section E=s amnesty provision, under its unambiguous language,
it does not apply to Emmett.  See Tex. Bus. Corp. Act Ann. art. 7.01, ' E.  Emmett is
treated as a Adissolved corporation@ only
under article 7.12.  See Tex. Bus. Corp. Act Ann. art. 7.12, ' F(1)(e) (stating A[i]n
this Article . . . [t]he term Adissolved
corporation@ means a corporation . . . whose charter was forfeited
pursuant to the Tax Code, unless the forfeiture has been set aside@) (emphasis added).





[5]  Article 5.14
of the Texas Business Corporation Act allows a shareholder to bring a
derivative suit.  Tex. Bus. Corp. Act Ann. art. 5.14 (Vernon 2003).  The intervenors did not file a shareholder=s derivative suit.





[6]  The
intervenors= petition commences with the following description of
the parties:  

Intervenor John Powers is a shareholder of Emmett
Properties, Inc.  If Emmett Properties,
Inc. did not have capacity to file suit in this action in its own name, then
shareholder John Powers was one of two true parties in interest and should be
substituted in place of Plaintiff Emmett Properties to the extent of his
ownership.

The petition describes intervenor La Git in the same
manner.  The intervenors do not sue on
behalf of the corporation, and at the time the intervenors petitioned to
intervene, Emmett had been reinstated.





[7]  The two cases
Trend cites in support of its contention that the filing of a motion to strike
an expert report does not constitute submission of the motion are
distinguishable and do not support Trend=s
argument.  See Taliaferro v. Smith,
804 S.W.2d 548, 550 (Tex. App.CHouston [14th Dist.] 1991, no writ) (holding in the
context of a summary judgment proceeding that a plaintiff may take a nonsuit at
any time prior to the time the court renders judgment); Mainland Sav. Ass=n v. Wilson,
545 S.W.2d 491, 493 (Tex. App.CHouston [1st Dist.] 1976, no writ) (holding partial
summary judgment in favor of defendant improper when plaintiff=s non-suit was timely filed prior to submission of
summary judgment motion).